(No. 14632.—Judgment affirmed.)

MAYME E. MARBLE, Appellant, *vs.* THE ESTATE OF MATTIE M. MARBLE, Appellee.

*Opinion filed June 21, 1922—Rehearing denied October 21, 1922.*

1. APPEALS AND ERRORS—*when an appellate court should not reverse on a question of fact.* An appellate court should not reverse a judgment on the ground that the finding of the trial court, which heard the case without a jury, is contrary to the evidence unless it regards said finding as manifestly against the weight of the evidence after taking into consideration the better opportunity of the trial court to determine the question by reason of its opportunity to see and hear the witnesses.

2. WORDS AND PHRASES—*meaning of the word "family."* The word "family" may mean a man's household at a particular period, consisting of himself, his wife, children and servants, or his children excluding his wife, or, in the absence of wife and children, it may mean his brothers and sisters or next of kin, or it may mean his race or generation.

3. TRUSTS—*subject matter, beneficiaries and nature of a trust must be clearly stated.* To create a trust the declaration must state clearly the subject matter or property embraced within the trust, the beneficiaries or persons in whose behalf the trust is created, the nature and quantity of the interests which they are to have, and the manner in which the trust is to be performed, and if any of these necessary elements is not described with certainty no trust is created.

4. SAME—*trust designating family as beneficiary may fail for want of certainty.* A devise to the family of A may be a sufficient designation to create a trust and may be construed to mean the heirs of A or the children of A or even the relations of A, according to the context, and, on the other hand, the language may be so loosely used as not to amount to a clear designation of any persons and therefore fail to create a trust.

5. SAME—*when claim against estate, based on alleged declaration of trust, cannot be allowed.* In a suit against an estate upon a claim based on an alleged declaration of trust in regard to an account which is barred by the Statute of Limitations, it is incumbent on the plaintiff to show the terms of the trust, the object thereof and the persons who were to take under it and on what conditions; and such a trust is not established where the evidence introduced shows merely an instrument in writing purporting to be

signed by the ancestor, which states the account and declares that the "family estate" is held in trust by the ancestor for the payment of the account.

6. SAME—*definition of a trust.* A trust may be defined as an obligation upon a person arising out of confidence reposed in him to apply property faithfully and according to such confidence, or it may be said to be in the nature of a deposition by which a proprietor transfers to another the property of the subject entrusted, not that it should remain with him but that it should be applied to certain uses for a third party; but in any trust there must be a particular piece of property or a certain fund to be held or dealt with in a particular manner for the benefit of another.

7. SAME—*a debt cannot be made a trust unless there is a particular fund for its payment.* A debtor cannot create a trust out of a debt which he owes without providing a fund to be applied to the payment of the debt, but the relation of debtor and creditor may be changed to that of trustee and *cestui que trust* if there is a declaration showing an intention on the part of the debtor to become a trustee, and showing also the existence of a fund in his hands or property in his possession which he holds for the benefit of the creditor.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. EDWARD BARRY, Judge, presiding.

HERRICK & HERRICK, and OGLEVEE & FRANKLIN, for appellant.

FIFER & BOHRER, and HALL, MARTIN, HOOSE & DEPEW, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Appellate Court affirmed a judgment of the circuit court of McLean county in favor of the defendant on a claim against the estate of Mattie M. Marble, and granted the appellant, Mayme E. Marble, a certificate of importance and a further appeal to this court.

The following document was the foundation of the claim:

"Mrs. M. A. Marble and Mattie M. Marble, in account with Walter E. Marble and Mayme E. Marble:

| | | |
|---|---|---:|
| 1879 | To cash (from Mayme E. Marble) used in purchase of the Graff grocery buildings, Las Vegas, New Mexico; title taken in name of M. A. Marble...... | $800 |
| 1887 | Cash used in purchase of house in Kingston, New Mexico; deed in name of Mattie M. Marble...... | 400 |
| 1889 to 1892 | Mining work on "The Little Jimmy," "The Little Annie," and other mining properties in Sierra Co., New Mexico, for shares owned by Mrs. M. A. Marble........................................ | 2,000 |
| 1890 | Cash paid for Stone post-office building, purchased for $1400 and owned by Mayme E. Marble one year, also additions to same by W. E. Marble, $1050; title given to Mattie Marble..................... | 2,450 |
| 1891 | Tunnel and exploration work on "The Chicago" mining property, Sierra Co., New Mexico; for shares of Mrs. M. A. Marble......................... | 1,500 |
| 1891 | 400 shares ($25) entire stock of 32 miles telephone line, Sierra Co., New Mexico, built and owned by W. E. Marble; turned over to Mattie M. Marble in trust ........................................ | 10,000 |
| 1891 | One-third of Delia Guyles' legacy left to W. E. Marble in trust with Mattie M. Marble; compromise for. | 10,000 |

$27,150

"St. Joseph, Mich., Thursday, Sept. 15, 1892.

"I acknowledge the above statement and claim of accounts and now enter them at full stated value into the family estate, with the mutual understanding that said estate is to be held in clear title by me and to be managed by me during my life as trustee, the estate to finally pass to the natural heirs of our mother, Mrs. M. A. Marble, failing which the above claim is to be paid from the estate, with interest at legal rate.

"I hereby agree to begin the education now, in boarding school, of two of the grandchildren, paying all expenses from family estate; and also to allow my brother Walter at least $15 per week from this date.          MATTIE M. MARBLE.

Witness: M. A. Marble, Kingston, New Mexico, Nov. 1st, 1892.

"We accept this settlement and agreement.
W. E. MARBLE,
MAYME E. MARBLE."

The cause was heard by the court without a jury. The only contested question of fact was the genuineness of the

signature of Mattie M. Marble. The testimony of twenty-five or thirty witnesses was introduced on this question, and so far as numbers were concerned they were about equally divided. There were several witnesses who testified as experts, and the testimony of a majority of them was favorable to the defense. Many signatures of the decedent on checks, drafts, letters and other documents were introduced in evidence as standards for comparison, the originals of which have been certified to this court. They were submitted to and used by the expert witnesses, who were subject, as were the other witnesses, to cross-examination. It was shown that Mattie M. Marble placed one of Walter's sons in a school in the fall of 1892 and paid his board and tuition for one year, and a letter written by her to the appellant in August, 1895, during the last illness of Walter, in which weekly drafts of $10 sent by her to the appellant were mentioned, was introduced in evidence. It is asserted on one side and denied on the other that these circumstances tend to establish the genuineness of the writing by showing Miss Marble's recognition of its obligation. The testimony is flatly contradictory, not as to any fact which is the subject of direct testimony, but as to the ultimate question whether the signature is Miss Marble's. There was no direct testimony that she made the signature. It was the province of the judge who heard the case, from the circumstances in evidence, a comparison of the writings and the opinions of the witnesses, giving to the opinion of each, whether expert or non-expert, such weight as his opportunity and capacity for observation and judgment, his skill and experience and the reasons for his opinion justified, to determine whether the signature was or was not Miss Marble's. The condition of the record is such that an appellate court would not be justified in setting aside the finding of the trial court on the ground that it is contrary to the evidence. To do so the appellate court must find that the finding is manifestly against the weight of the evidence, after taking into con-

sideration the better opportunity of the trial court to determine the question by reason of its opportunity to see and hear the witnesses. There was ample evidence to sustain a finding either way when only the evidence on one side is considered, and when all the evidence is considered it is too evenly balanced to enable the court to say that a finding either way is manifestly against its weight. The Appellate Court, in an opinion which rested entirely on a consideration of the evidence, determined that the signature was not the genuine signature of Miss Marble, agreeing with the judgment of the trial court. It is said in the appellant's brief that the circuit court did not find any forgery of the signature. That court found the issues for the defendant, and there is nothing in the record to indicate that it found the instrument in question was executed by Miss Marble. If we were authorized to pass upon and weigh the evidence we could not reverse the judgment on the ground that the evidence did not sustain it. However, even a finding that the document bore the genuine signature of Miss Marble would have afforded no basis for a judgment against her estate. The theory of the appellant is that the instrument in question is evidence of the creation of a trust in Miss Marble in favor of Walter E. Marble and Mayme E. Marble, the subject matter of which was the indebtedness mentioned in the instrument; that Miss Marble was to hold a sum of money mentioned as due Walter and Mayme as part of the family estate in trust during her life; that she was to manage it during her life and at her death it was to go to the natural heirs of Martha A. Marble, the mother of Mattie and Walter, and if it did not do so, then the claim was to be paid from the estate, with interest at the legal rate. The instrument acknowledges the statement of account of transactions occurring at various times during a period of fifteen years prior to its date, which might be regarded as an account stated and admission of indebtedness; but if it is to be regarded only as such it would be

unavailing to the appellant, for as an account stated the claim is long since barred by the Statute of Limitations. There is no promise of Miss Marble to pay at any time but her only obligation is with reference to the "family estate." The appellant has therefore argued that the record shows the existence of a trust, and this proposition is essential to her success.

It appears from the record that Dr. John Marble, a resident of Bloomington and the father of Mattie M. Marble and Walter E. Marble, died in 1864, leaving a small estate, consisting of a second-hand store in the city of Bloomington and little else, and debts amounting to almost the value of the estate. He left a will, which was probated, but his estate was never administered upon. The will gave all his property to his wife, and she, together with Mattie, took possession of and managed the store. Besides Mattie, Dr. Marble left another daughter, Delia, and three sons, John, William and Walter. Delia married William Guyles and died in 1891, leaving her entire estate to her sister by her will, which was admitted to probate in Berrien county, Michigan. Mattie was sued in the circuit court of Berrien county as executrix of Delia's will by the latter's mother-in-law to recover for her son his interest in Delia's estate, and as a result of the suit Mattie paid to Guyles' mother $5000 and gave bond to care for Guyles, who was insane, until his death, and she did care for him for several years until his death. The estate amounted to $25,000 or $30,000. John Marble died before any of the transactions involved in this suit, leaving no children. Walter died in 1895, leaving the appellant his widow, a daughter, Grace, and three sons, Walter, Ray and Meredith, all of whom are living. Martha Marble, the widow of Dr. Marble, died in 1901, aged eighty-five years. William died in 1911, having never married and having been cared for and supported by Mattie to the time of his death. Mattie was a very competent business woman, thrifty and industrious and accumulated

wealth. Martha Marble in 1890 was the owner of a store building and a residence in Bloomington and by two warranty deeds conveyed them to Mattie, the store building for a consideration of $10,000 and the residence for a consideration of $3000. At the time of her death Mattie was the owner of a business block in Bloomington worth $55,000, another worth $35,000, a residence worth $7000, some lots in Tacoma, Washington, valued at $1500, and she owned $20,000 in Liberty bonds, the total inventory of her estate amounting to about $120,000. By her will she directed the payment of her debts, gave $15,000 in government bonds to Grace, $1000 each to Walter, Ray and Meredith Marble and the appellant, and, after some provisions immaterial to this controversy, gave the residue of her property to the Girls' Industrial Home of Bloomington. The appellant and her children are, and have been ever since the date of the instrument in question, of limited means financially, except the claim involved in this litigation. A few weeks before her death Mattie gave Grace $3500.

It is essential to the creation of a trust that the declaration must make reasonably certain its material terms, and that these terms include, first, the subject matter or property embraced within the trust; second, the beneficiaries or persons in whose behalf the trust is created; third, the nature and quantity of the interests which they are to have; and fourth, the manner in which the trust is to be performed. If any of these necessary elements is not described with certainty no trust is created. (*Orr* v. *Yates,* 209 Ill. 222; *Snyder* v. *Snyder,* 280 id. 467.) If the instrument in question is sufficient in other requisites it is entirely lacking in a description of the subject matter of the trust,— the property to which the trust attaches. The only words which can be taken to be descriptive of the subject matter of the trust are the words "the family estate," into which the claim of appellant is stated to be entered at full value.

There is no evidence of what the family estate consisted or that there was any family estate. There is no evidence of what property Mattie M. Marble was possessed at the date of the instrument. She may have been operating the store which had belonged to her mother after her father's death; she may have retained some or all of the property from her sister's estate; she may still have owned the property conveyed to her by her mother two or three years before; she may have had some part of the mining property or other property in New Mexico mentioned in the instrument in question. Whatever she had, so far as the evidence shows, was her own property, acquired and paid for by her own means, not subject to any trust, not a part of any family estate, and the instrument does not purport to devote her property, or any particular part of it, to a trust in favor of her brother and his wife or "the family" or any other beneficiary. If any estate was held in trust by her in her lifetime and managed by her as trustee the evidence does not show it.

The words "family estate," without a context, are without meaning. They have no technical meaning. Bouvier defines "family" as "father, mother and children; all the individuals who live under the authority of another, including the servants of the family; all the relations who descend from a common ancestor or who spring from a common root." He continues: "In the construction of wills the word 'family,' when applied to personal property, is synonymous with kindred or relations. It may, nevertheless, be confined to particular relations by the context of the will, or may be enlarged by it so that the expression may in some cases mean children or next of kin and in others may even include relations by marriage." It has been held that a man living in the household of his brother is eligible as a beneficiary in a certificate of a society under a statute restricting benefits to members of the society and their immediate families. (*Norwegian Old People's Home*

*Society* v. *Wilson,* 176 Ill. 94.)    Under a similar statute
an unmarried man living with his father designated him as
a beneficiary.    He afterward married, lived with his wife
and child separate from his father, and died without hav-
ing changed the beneficiary.    It was held that the son's im-
mediate family at his death consisted only of his wife and
child; that his father was not at that time a member of
the son's immediate family; that the designation of him as
a beneficiary was at that time void, and the wife and child
were entitled to the money.    (*Knights of Columbus* v. *Rowe,*
70 Conn. 545.)    A widow who kept a boarding house and
who had a friend residing with her as one of the family
and had servants also was held to be the head of a family,
of which the friend and servants were members, under the
act exempting certain property from execution.    (*Race* v.
*Oldridge,* 90 Ill. 250.)    A man's family may be considered
as his household at a particular period or his race or gen-
eration.    (*McCullough's Heirs* v. *Gilmore,* 11 Pa. St. 370.)
The word may mean a man's household, consisting of him-
self, his wife, children and servants; it may mean his wife
and children, or his children excluding his wife, or, in the
absence of wife and children, it may mean his brothers
and sisters or next of kin, or it may mean the genealogical
stock from which he may have sprung.    (2 Story's Eq. Jur.
sec. 1065*b*.)    A devise to the family of A may be a suffi-
cient designation to create a trust, and may be construed to
mean the heirs of A or the children of A, or even the re-
lations of A, according to the context, and, on the other
hand, the language may be so loosely and indeterminately
used as not to amount to a clear designation of any per-
sons and thus may fail to create a trust.    (2 Story's Eq.
Jur. sec. 1071.)

The instrument in question clearly fails to create a trust,
and if it be regarded as referring to a trust previously
created, the record is entirely silent as to any of the es-
sential requirements of such trust, the property embraced

within it, the beneficiaries, the nature and quantity of their interests and the manner in which the trust is to be performed. First, as to the creation of the trust, there is nothing to show when, by whom or why the trust was created or for whose benefit. The appellant seems to assume that the family referred to is the family of Dr. John Marble, and argues that he died leaving all his property to his wife, the mother of the family. She died, and, counsel state, evidently had no estate when she died, and they assume that her property had been turned over to Mattie M. Marble in her mother's lifetime. The sister, Delia, died and left a will giving all her estate to Mattie. The brother William died and there was no administration of his estate. It is assumed that Walter and Mayme placed their estate in the hands of Mattie, as trustee, before Walter died, and these facts, in connection with the writing in question, are assumed to establish "the fact that the Marble family had a well designed plan to keep the family estate intact. The father first controlled the property, then the mother, then Mattie M. Marble, a daughter." There was no family estate to keep intact. It is assumed that when Mattie died, leaving an estate of about $120,000, the estate was merely the accumulation of the family estate. This argument has its foundation more in an exercise of the imagination than in a consideration of the evidence. Dr. Marble left substantially no property. He left a family but practically no estate. The value of the second-hand store, which constituted his estate, scarcely exceeded his debts. The family had no interest, legal or equitable, in the estate, which was given to the widow as her individual property. Even though the $120,000 of Mattie's estate had its origin in the business of the second-hand store, which her mother owned and they managed together after her father's death, this gave her brothers and sisters no interest, legal or equitable, in that business or the profits arising from it. If any kind of trust arose in the property which in 1892 belonged to

Mattie, or in any property which she afterward acquired, it was an express trust and must have been created by some kind of an instrument or agreement to which she was a party. The court can only find the existence of such a trust upon evidence of the terms and conditions of its creation. The conclusion cannot be derived from surmise, conjecture or inference drawn from vague and uncertain premises. Even though the intention to create a trust in a party clearly appear, if the terms by which it is created are so vague and indefinite that the court cannot ascertain clearly either its object or the persons who are to take, then the trust will be held entirely to fail. (2 Story's Eq. Jur. sec. 979a.) If any trust of a family estate was created it was incumbent on the appellant to show its terms, the object of the trust, the persons who were to take under it and on what conditions. In the appellant's brief it is said that the contract is silent as to what was meant by the family estate but that the silence is the silence of Mattie and is only as to the identity or amount of property that constituted such estate other than the items contained in the statement itself. The statement does not recognize the items mentioned in it as constituting a trust estate. It acknowledges the statement and claim of accounts and may be regarded as admitting an indebtedness growing out of those items, which is entered at full stated value into the family estate, but there is no admission that Mattie holds in her possession or is the owner of any of the property mentioned in the statement, or that that property is to be held in trust or is the family estate or a part of it, or what is the family estate; and even though the instrument be regarded as an admission of the existence of a trust, yet, since the record is silent as to what was meant by the family estate, the nature of the trust, its terms and conditions, these cannot be ascertained, and appellant has not shown herself entitled to any relief. It is not sufficient to show that a trust ex-

isted, but it is incumbent on the appellant to show what its terms were and that they had been disregarded.

A trust has been defined as an obligation upon a person arising out of the confidence reposed in him to apply property faithfully and according to such confidence. A trust is also said to be in the nature of a deposition, by which a proprietor transfers to another the property of the subject intrusted, not that it should remain with him, but that it should be applied to certain uses for the behoof of a third party. (1 Perry on Trusts, sec. 2.) In section 82 it is said that "there is no particular formality required or necessary in the creation of a trust. Any agreement or contract in writing made by a person having the power of disposal over property, whereby such person agrees or directs that a particular parcel of property or a certain fund shall be held or dealt with in a particular manner for the benefit of another, in a court of equity raises a trust in favor of such other person against the person making such agreement, or any other person claiming under him, voluntarily or with notice." It is always necessary to a trust that there should be a particular piece of property or a certain fund to be held or dealt with in a particular manner for the benefit of another. A debtor cannot create a trust out of a debt which he owes without providing a fund to be applied to the payment of the debt. The relation continues to be merely that of debtor and creditor so long as he merely owes the debt and has provided no fund for its payment. The relation may be changed to that of trustee and *cestui que trust,* but in order to effect the change there must be some particular property or certain fund held for the benefit of the *cestui que trust.* It is essential, however, that the declaration must not only show an intention on the part of the debtor to become a trustee, but it should also show the existence of a fund in his hands or property in his possession which he holds for the benefit of the creditor. (*Hamer* v. *Sidway,* 124 N. Y. 538; *Hay* v. *Roth,* 18 id.

448.) Since the evidence in the record fails to show the existence and terms of the supposed trust of the family estate, it does not show any breach of trust or any liability of the estate of Mattie M. Marble to the appellant.

The judgment is affirmed.

*Judgment affirmed.*