Floyd H. Kilgore and Ira Kilgore, Formerly Trading as Kilgore Implement Company, for the use of John Deere Plow Company, Appellee, v. State Bank of Colusa, Appellant.
International Harvester Company, Appellant, v. John Deere Plow Company, Appellee.

Gen. No. 9,177.

Opinion filed April 24, 1939.

JAMES D. BAIRD, of Carthage, for certain appellant.

EDWARD C. MACK, of Carthage, for certain other appellant.

EDWARD S. MARTIN and O'HARRA, O'HARRA & ROETH, all of Carthage, for appellee.

MR. JUSTICE HAYES delivered the opinion of the court.

This is an action in garnishment, brought by Floyd H. Kilgore and Ira Kilgore, formerly partners under the name of Kilgore Implement Company for the use

of John Deere Plow Company, against the State Bank of Colusa, as garnishee, to subject six hundred five dollars and one cent ($605.01), deposited in the name of F. H. Kilgore, to the payment of a judgment recovered by John Deere Plow Company in the circuit court of Hancock county, Illinois, on May 20, 1935, against said Floyd H. Kilgore and Ira Kilgore, formerly partners. The International Harvester Company, by leave of court, was permitted to intervene as claimant to the same, basing its contention upon two conditional sales contracts which it had entered into with Floyd H. Kilgore as its dealer,—the said International Harvester Company being manufacturers of farm implements. Said contracts provided that, the title to all goods shipped under said contracts with the right of repossession for default is reserved by the company until the purchaser has made full payment in cash for all goods and that prior to full settlement in cash, the purchaser shall have no right to sell or dispose of any goods delivered thereunder, except for value received in the ordinary course of trade and upon the express condition that prior to the delivery of any of said goods to a customer, the dealer shall secure from said customer a full settlement in cash or good and bankable notes, and that the proceeds of all resales shall be considered the property of the company in lieu of the goods so sold, and held in trust for it and subject to its order, until all sums due under said conditional sales contract have been fully paid as provided in paragraph 4 of said contract.

The intervenor further contends that the provisions in said conditional sales contracts are not only binding upon Floyd H. Kilgore, the purchaser, but also binding upon any judgment creditor of his,—in this instance the John Deere Plow Company.

It appears from the record that Kilgore deposited the moneys received by him from the resale of machin-

ery which he acquired from the International Harvester Company to his own account in the Colusa Bank. He also deposited, in the same account, his individual funds, and the money he received in the sale of clover seeds, and from the sale of goods other than those purchased from the International Harvester Company. From time to time he wrote checks on this account,—some to the International Harvester; other checks for his individual business; his individual obligations. On March 15, 1935, Kilgore had in his account the sum of sixty-three dollars and thirty-five cents ($63.35), and on that date he paid the International Harvester Company of America ten dollars and ninety cents ($10.90) for a corn sheller. He then owed the company other moneys. On May 21, 1935, the date of the writ of garnishment, Kilgore was indebted to the International Harvester Company in the sum of sixty-five hundred ($6,500) dollars. At the time of the filing of the interplea, Kilgore was indebted to the International Harvester Company for six thousand five hundred fifty-eight dollars and seventy-seven cents ($6,558.77), for goods received from the International Harvester Company between November 1, 1934, and October 1, 1935. It is therefore impossible to state, whether or not the funds he withdrew from this account between the 13th day of March, 1935, and the 21st day of May, 1935, and which he paid to the International Harvester Company, aggregating four thousand three hundred seventy-three dollars and thirty-nine cents ($4,373.39), were for the six particular items mentioned in the interplea, or whether they were the proceeds from the sale of other property. He had on deposit at the time the writ was served six hundred five dollars and one cent ($605.01). The six particular items mentioned in the interplea were sold for eight hundred fifty-three dollars and one cent ($853.01). This $853.01 was intermingled with

his individual funds, and funds arriving out of the sale of clover seed and other goods not purchased from the International Harvester Company, so that it is impossible to identify the $605.01 as the proceeds of the resale of the six articles set up in the interplea.

It appears from the record that Kilgore had had considerable dealings with the International Harvester Company over a long period of time and involving several thousand dollars. During this time a representative of the International Harvester Company made regular calls on the dealer and he made the International Harvester Company a large number of payments by check, all from this same checking account which was in his individual name, so the reasonable deduction is that the Harvester Company had knowledge of how Kilgore was handling the various transactions.

In the case of *Allis Chalmers Mfg. Co. v. Moore,* 31 F. (2d) 50, it appears in that case that the goods were sold by the bankrupt; the proceeds received and used by him as his property with the knowledge, consent and approval of the petitioners. The court held that the petitioners thereby waived any right which it might have to or lien on the proceeds received by the bankrupt and sale of the said goods, even though it appears the agent testified that it was the understanding between him and the bankrupt at the time of the sale that the proceeds should be held by the bankrupt for the petitioner. The court held this as wholly inconsistent with the acts of the parties, and if there was any such agreement, it was clearly waived and abrogated by their subsequent conduct.

Although section 20, ch. 121½ of the Statute on Sales [Ill. Rev. Stat. 1937, § 20; Jones Ill. Stats. Ann. 121.24], provides for the conditional sale of specific goods so as to reserve the title to the chattels in the vendor until the purchase price is paid, there is noth-

ing in this statute that provides for following these funds and earmarking them after a resale, and section 20 is limited by section 23 of the same act, which provides if the property is resold without the consent of the vendor, a purchaser on the resale is protected, if the vendor has done any act precluding him from denying the seller's title. Legislature makes provisions, under this section, to protect an innocent purchaser where the real owner has led the purchaser to believe by his conduct that the dealer had the right to sell.

It cannot be held that when the vendor consents to a resale in the ordinary course of a dealer's business, and the vendee is given the indicia of ownership; sells the property to his customer; passes title to him; is permitted by the vendor to retain the proceeds in his own bank account and treat the same as his own, that under the provisions of the conditional sales act he can then hold those proceeds upon the theory of a reserved title hereto or a trust in the same, as against a judgment creditor of the vendee, levying a garnishment writ on the same.

The only language in the conditional sales contract in which the International Harvester Company base their claim for the creation of a trust is the following: "That the proceeds of all resales shall be considered the property of the company in lieu of the goods so sold and held in trust for it, and subject to its order as provided in paragraph four hereof, until all sums due under this contract have been fully paid." The language in itself is uncertain and ambiguous. In the first instance, it provides that the proceeds of all resales shall be the property of the company. Up to this point, there is no separation of the legal and equitable title, but it simply provides for exclusive ownership in the company. The next clause, "in lieu of the goods so sold and held in trust," the words "so sold" of course modify goods, and "held in trust" is open

to a double construction. First, "goods held in trust" as descriptive of the goods before the sale, and second, the proceeds of the sale held in trust. It further appears that these conditional sales contracts are on regular forms drawn by the International Harvester Company.

The declaration of trust must make reasonably certain its material terms so that a court may enforce its execution. 65 Corpus Juris 270, sec. 50. These terms include first, the subject matter or property embraced within the trust; second, the beneficiaries or persons in whose behalf the trust is created; third, the nature and quantity of the interests which they are to have; and fourth, the manner in which the trust is to be performed. If any of these necessary elements are not described with certainty, no trust is created. *Marble v. Marble's Estate,* 304 Ill. 229, 235.

To constitute a valid trust of personal property there must be a declaration by a person competent to create it, a trustee, designated beneficiaries, a certain and ascertained object, a definite fund or subject matter, and its delivery or assignment to the trustee. *Gurnett v. Mutual Life Ins. Co.,* 356 Ill. 612, 618.

The contention that a trust results from the meager language used in the contracts in question, when considered in connection with the facts, incidents and circumstances in this case, is a strained and illogical construction of the law governing trusts, and an effort to extend the provisions of the statute providing for conditional sales contracts unreasonably beyond its defined limits.

In its simplest elements, a trust is a confidence reposed by one person called a trustee, for the benefit of the other called a *cestui que trust,* with respect to property held by the former for the benefit of the latter. Although a trust is not considered a contractual relation, it may arise out of a contract, and it may

arise by implication no less than by expressed words, but expressed trusts and trusts implied from the language of the instrument must inherently possess the legal specifications which will enable a court to decree its administration in accordance with the wishes of the settlor, who alone has the power to assent to it and to declare it. The primary object of a trust being to confine the powers of the beneficiaries and to deprive them of any power to dispose of and manage the trust. 65 Corpus Juris 218, Sec. 7.

Upon the most casual consideration, it is readily apparent that the contracts in question meet none of the cardinal principles laid down by the law governing expressed trusts. To hold that a valid trust exists under the contract and circumstances in this case would invade a wholly new field for the law. Every manufacturer and wholesaler in selling merchandise to retail dealers that was for resale to the consuming public, would have a precedent whereby they could rubber stamp on their invoices or delivery receipts the words, ''on resale, proceeds to be held in trust.'' The law would then have the task of attempting to follow these proceeds into the merchant's bank account and separate them into the various trust accounts. This is a new and unknown field in law and commerce, and would lead to much confusion and an unwarranted extension and annexation to the law of governing conditional sales contracts that is for the legislature to extend rather than the courts.

The policies of the courts of Illinois have been to guard zealously against secret liens not expressly provided for by the statutes. For the reasons herein stated, the judgment of the circuit court is hereby affirmed.

*Judgment affirmed.*