Sarah J. Kingsley, Appellee, v. Montrose Cemetery Company, Appellant.

Gen. No. 40,319.

274

Heard in the second division of this court for the first district at the October term, 1938.

Opinion filed April 2, 1940.

CECIL C. ERICKSON, of Chicago, for appellant.

EARL G. BINGHAM, of Chicago, for certain appellee.

MAX A. KOPSTEIN, of Chicago, for certain other appellee.

MR. PRESIDING JUSTICE JOHN J. SULLIVAN delivered the opinion of the court.

Minnie V. Billings died February 3, 1936, leaving a will dated July 27, 1922. This will disposing of the decedent's estate, which consists entirely of personal property, contains the following among other provisions:

"FOURTH

"I give and bequeath to Montrose Cemetery Company, an Illinois corporation, the sum of Twenty-five Hundred Dollars ($2500.00) to be invested and reinvested according to the rules and regulations of said Cemetery Company for the perpetual care and maintenance of my said cemetery lot one hundred sixty in section fourteen in said Montrose Cemetery and to be held by said Montrose Cemetery Company in perpetual trust for the purpose of investing the same and devoting the net income thereof to the care, repair and beautifying and maintaining the monument thereon in good and sightly condition as well as the care and maintenance of my said cemetery lot including any additional lot or parcel of ground in said cemetery and ad-

joining said lot acquired by me or by my trustee under this my will. This bequest is made subject to the rules and regulations of said Montrose Cemetery Company and I direct that no interments or burials shall be made in my said cemetery lot or in any additional ground in said cemetery acquired by or for me or for my estate except only my own body and the body of my husband, Emmet E. Billings and that the care and maintenance of my cemetery lot shall be solely in charge of said Montrose Cemetery Company, without suggestion or interference by any person whomsoever.

## "FIFTH

"I nominate and appoint the Continental and Commercial Trust and Savings Bank, an Illinois corporation, trustee under this my Will and I give, devise and bequeath to said Continental and Commercial Trust and Savings Bank, all the rest, residue and remainder of my estate, real, personal and mixed, wheresoever situate and of whatsoever name or nature that I now have, may have at my decease or be or become entitled to, but in trust, nevertheless, for the execution of this my Will concerning the same, that is to say:

"1—To take and receive the estate hereby granted and to sell and dispose of all my property, real, personal and mixed, wheresoever situate, and to make, execute and deliver all such conveyances, assignments and assurances as may be necessary or convenient in the disposition thereof and I expressly direct that the purchaser at any sale, transfer or disposition of any part thereof shall not be required to see to or held responsible for the application of the proceeds arising from any such sale or transfer, and reduce the same to cash as my trustee shall see fit and from the proceeds thereof to erect a monument on my cemetery lot known as lot one hundred sixty in section fourteen of Montrose Cemetery in the City of Chicago, County of Cook and State of Illinois and upon such additional ground

as may be acquired in compliance herewith, over the graves of my husband, myself and my father and mother. I direct that such monument shall be erected by my trustee as speedily as may be after the settlement of my estate and that, if expedient, it shall be what is known as a canopied stone monument and as nearly as may be of the style and design of the monument in Rose Hill Cemetery in Chicago, Cook County, Illinois, heretofore erected and now standing over the graves of John Mason Loomis, late Colonel of the Twenty-sixth Regiment, Illinois Infantry Volunteers, and his wife and daughter and that the base and foundation thereof shall be, as nearly as may be, fifteen (15) feet by twenty (20) feet and that the material and workmanship used in the construction of said monument shall be as good as can be conveniently secured and that there shall be conspicuously inscribed on said monument in large raised letters on both ends and both sides thereof and near the top thereof the name 'Myers' and there shall also be inscribed on said monument the names, dates of birth and death of my father, DeWitt C. Myers, my mother, Triss H. Myers, my husband, Emmet E. Billings and myself, Minnie V. Billings, preferably in deep cut letters on the top of the base of said monument.

"In the event that my said cemetery lot shall not be large enough to accommodate the interments of myself and my husband, Emmet E. Billings, or not large enough to adequately accommodate the monument herein provided for then and in either such event I direct that my trustee shall acquire such additional adjoining ground in said Montrose Cemetery as may in its judgment be sufficient and proper therefor and in the event that there shall not be sufficient funds in the trust estate hereby provided for to carry out my wish as above expressed in regard to such monument, then and in that event it is my will and I direct that my trustee shall use its discretion and carry out my wish in regard thereto as nearly as may be.

"2—I give and grant to my trustee, said the Continental and Commercial Trust & Savings Bank full power and authority to use the entire amount of the trust fund hereby created, or such part thereof as it may deem necessary or convenient in carrying out my purpose to erect the monument referred to in paragraph one hereof, since I have conserved and saved my estate during the greater part of my lifetime for the express purpose of erecting and providing for such monument to my father and mother, my husband and myself and have been prevented from carrying this my fixed purpose into effect only by reason of my inability to erect such a monument and have sufficient property left to assure me of proper care during the remainder of my life.

"3—If any residue remains in said trust fund after my trustee shall have fully carried out my wishes in regard to said monument as herein expressed, and after the payment of the reasonable charges of said trustee, its agents and attorneys in that behalf, then and in that event I direct said The Continental and Commercial Trust and Savings Bank to pay and distribute such residue of said trust estate to my aunt, Mrs. Sarah Kingsley, of number 1134 Lincoln Street, Denver, Colorado, if she shall survive me and in the event that Mrs. Sarah Kingsley shall not be living at the time of my death, then and in that event I direct that my said trustee shall pay and distribute such residue of said trust estate to Improvement Association for Blind People, an Illinois corporation."

The executor named in the will predeceased the testatrix and the public administrator was appointed administrator with the will annexed. A perpetual care agreement, entered into May 21, 1924, between the testatrix and Montrose Cemetery Company, which related to the cemetery lot described in the will and under which $204 had been paid by her to said cemetery company, was found among the effects of the decedent.

On February 4, 1937, Sarah Jane Kingsley, residuary legatee under the will, filed a complaint, in which she alleged *inter alia* ''that the question has arisen whether by means of said Perpetual Care Agreement entered into as aforesaid, the testatrix during her lifetime after the execution of her said will accomplished the purpose of the legacy given the Montrose Cemetery Company in trust by provision 'Fourth' of her said will and thereby rendered ineffectual the said provision of said will,'' and prayed that the court ''may construe the effect of the said Perpetual Care Agreement, by and between the testatrix, Minnie V. Billings, and the defendant, Montrose Cemetery Company, upon said provision 'Fourth' of the Will and testament of said testatrix and that the Court may find and decree that said provision 'Fourth' was satisfied and its purpose accomplished by said Minnie V. Billings during her lifetime after the execution by her of her will; that as to the property purported to have been bequeathed by said provision 'Fourth,' the Court may decree that the defendant, Montrose Cemetery Company, has no right, title or interest therein or thereto, and that said provision 'Fourth' is wholly ineffective with respect to the bequest therein mentioned; that the Court may find and decree that the said property is part of the residuary estate of said Minnie V. Billings, Deceased, or that as to said property said Minnie V. Billings died intestate.''

The complaint made the public administrator a party defendant and in his answer he assumed a neutral position in respect to the issue involved, merely requesting instructions from the court concerning the construction of the will.

Defendant Montrose Cemetery Company (hereafter for convenience sometimes referred to as defendant) filed an answer, in which it challenged the propriety of the construction of the fourth paragraph of the will sought by plaintiff. It also filed an amended counter-

claim, which, after setting forth the fifth paragraph of the will, alleged that it is a beneficiary under the trust established by the testatrix in said paragraph of her will in that,

"a. The building of such a monument as described in said Will, will augment and increase the sale of burial lots in said cemetery.

"b. The building of such a monument will require additional ground, from the sale of which the Montrose Cemetery will receive material benefits.

"c. The building of such a monument will require a foundation to support same which will be layed by the Montrose Cemetery Company for which said Montrose Cemetery Company will receive material benefits.

"d. The building of such a monument will increase the value of unsold burial lots in said cemetery.

"e. Said Montrose Cemetery Company has other beneficial interests in the said trust estate and proceeds thereof."

It further alleged that "the Continental & Commercial Trust & Savings Bank, one of the Defendants, named as Trustee in said Will, has refused and still refuses to accept its appointment as Trustee, and to act in that capacity; that said Will . . . makes no provision for the appointment of a successor Trustee thereunder; that by virtue of the foregoing, Martin J. O'Brien, as Administrator with Will annexed of the Estate of Minnie V. Billings, deceased, . . . cannot properly administer said Estate, nor execute the wishes of the Testatrix as expressed in and under said Will"; and prayed "that a successor trustee under the last will and testament of Minnie V. Billings, deceased, be appointed."

The cause was referred to a master in chancery whose commission expired while the case was still pending before him and who concluded his hearings and made his report under an appointment as special commissioner. Defendant presented evidence before

the special commissioner in support of the allegations of its amended counterclaim as to the benefits that would accrue to it if the trust sought to be created under the fifth paragraph of the will were carried into effect.

The decree ordered "that Martin J. O'Brien, as Administrator with the will annexed of the Estate of Minnie V. Billings, Deceased, treat the Fourth clause of said decedent's will as authorizing payment to the Montrose Cemetery Company, in trust, a principal sum not exceeding $2,296, the income whereof calculated at 4 per cent annually, to produce annually such amount up to and including $91.84 as may be found necessary in payment for a contract with said Montrose Cemetery Company to provide perpetual and permanent care and repair of the monument on Lot No. 160 in Section 14 of said Montrose Cemetery Company, and for special work to be done to the graves in said lot." No appeal has been taken from the foregoing portion of the decree construing the fourth paragraph of the will.

As to the fifth paragraph of the will, the decree found "that the Continental Illinois National Bank and Trust Company of Chicago, successor by consolidation of the Continental and Commercial Trust and Savings Bank, has disclaimed all interest under said will and has refused to act under said will, that the Montrose Cemetery Company, a defendant, filed its counterclaim as amended, herein, asking the Court to appoint a successor trustee to said Continental Illinois National Bank and Trust Company of Chicago; and that the will itself shows no intent on the part of the testatrix to make the Montrose Cemetery Company a beneficiary, and that said Montrose Cemetery Company has not any interest in the subject matter of this litigation sufficient to entitle it to the relief prayed for in its counterclaim." It then ordered "that the counterclaim, as amended, of the defendant, Montrose Cemetery Com-

pany, be and it is hereby dismissed.'' Defendant Montrose Cemetery Company appeals from this portion of the decree.

Defendant contends that the court erred in finding ''that the trust contained in paragraph *'Fifth'* of the will of Minnie V. Billings, deceased, is void''; in finding ''that said Montrose Cemetery Company, defendant, was not a beneficiary under said trust''; in finding ''that said Montrose Cemetery Company, defendant, had not any interest in the subject matter of the litigation sufficient to entitle it to the relief prayed for in its counterclaim for the appointment of a successor trustee''; and in finding ''that the 'Fifth' paragraph of said will does not create a valid trust in that it fails to designate a beneficiary capable of demanding the enforcement of the terms thereof.''

Plaintiff's theory as stated in her brief is as follows:

''Regarding provision 'Fifth' of the will, wherein it relates to the erection of a monument on the cemetery lot of the testatrix, plaintiff's theory is that under said provision the Montrose Cemetery Company is not given any direct, actual, present interest therein, nor is it designated as a beneficiary thereunder; that the subject matter of said provision pertains to an expenditure for funeral expenses and ordinarily the duties of an executor or administrator and as such a provision, it is valid, but, although it names a trustee, said provision *'Fifth'* fails to establish a valid trust. That therefore said defendant's counterclaim asking for the appointment of a successor trustee to administer said provision *'Fifth'* must fail either for lack of showing sufficient interest in its subject matter on counterclaimant's part, or because no trust requiring the appointment exists, or for both said reasons.''

The relief sought by defendant in its counterclaim— the appointment of a successor trustee—necessarily involved the construction of the fifth paragraph of the will. Two questions are raised by plaintiff's reply to

defendant's counterclaim. Has counterclaimant such an interest in the subject matter of the fifth paragraph of the will as to give it the right to ask for the appointment of a successor trustee? Since the fifth paragraph of the will failed to designate a certain beneficiary, did that paragraph, which provided for the erection of a new monument on decedent's lot in Montrose Cemetery, create a valid trust? It is readily apparent that the alleged interest of counterclaimant in the subject matter of the fifth paragraph is based on future benefits that would or might accrue to it from the erection of the monument. Such future benefits are in their very nature conjectural, contingent and incidental and are insufficient to entitle defendant Montrose Cemetery Company to the relief sought in its counterclaim. The claimant in a proceeding in equity to enforce a trust must show an actual existing interest in the subject matter of the trust. (*McGovern v. McGovern,* 268 Ill. 135.) "If we keep in mind the distinction between a mere conditional future interest in a trust estate generally and a present title or interest in the estate, the case is free from difficulty." (*Green v. Grant,* 143 Ill. 61.)

We are in accord with the following findings of the special commissioner:

"That the will shows a clear intent on the part of the testatrix to have a monument erected on her lot in the Montrose Cemetery as described in the fifth paragraph of said will; that the evidence introduced indicates that the Montrose Cemetery would receive certain benefits in the event that the monument described in the fifth paragraph of said will should be erected; that the will itself shows no intent on the part of the testatrix to make the Montrose Cemetery Company a beneficiary. That your Special Commissioner is unable to find from all the evidence that the Montrose Cemetery Company has any interest in the subject matter of this litigation sufficient to entitle it to the relief prayed for in its counterclaim.

"Your Special Commissioner finds that the testatrix has failed in the fifth paragraph of her will to establish a valid trust in that she has failed to create a beneficiary capable of enforcing the terms of the trust which she sought to create by said fifth paragraph of her will."

We are also in accord with the finding of the decree "that said Fifth paragraph of said will does not create a valid trust in that it fails to designate a beneficiary capable of demanding the enforcement of the terms thereof."

It is urged that, notwithstanding the fact that the Montrose Cemetery Company was not specifically named as a beneficiary under the provisions of the fifth paragraph of the will, a valid trust may be created even though no certain beneficiary is named and that parol evidence may be introduced to determine who is the, or a, beneficiary. The evidence upon which defendant relies in this regard is the evidence heretofore referred to that it would reap certain incidental benefits if the monument were erected. In determining whether a valid trust was created under said paragraph it is of no importance as to who would or might benefit incidentally if the provisions of such paragraphs were carried into effect. The fatal defect in the attempt of the testatrix to establish a trust for the erection of the monument was her failure to name a beneficiary capable of enforcing the provisions of the fifth paragraph of the will. As was said in *In re Johnson's Will*, 5 N. Y. S. 922, "there is no beneficiary in existence who is interested in or can demand the execution of the trust." While it was clearly the intention of the decedent that the assets composing the residue of her estate of the approximate value of between $8,000 and $10,000 should be used to erect a monument on her cemetery lot, it certainly does not appear that it was her intention to make defendant Montrose Cemetery Company the beneficiary in any legal or equitable sense of the trust she sought to create for the erection of the monu-

ment. The discussion of the effect on a trust of the failure to name a certain beneficiary who can compel its enforcement in *Levy v. Levy*, 33 N. Y. 97, is particularly applicable. In that case the court said at pp. 101, 107, 121:

"The residue of the testator's estate is donated, in trust, to establish and maintain perpetually in a foreign State, a school for agricultural instruction, of half-orphan children of warrant officers of the United States navy. This disposition, it must be conceded, according to the ordinary rules of law, and the general rule in chancery as to trusts, is void. It cannot be claimed that, at common law there can be a valid devise or bequest to an indefinite object, or a valid use without an ascertained *cestui que trust* or beneficiary. In legal limitations, there must be a definite grantee, devisee, or donee; and in the limitation of equitable estates the rule is the same. There must be a beneficiary or certain equitable donee, grantee, or devisee. If a trust be well declared, and there be a certain beneficiary capable of coming into court and claiming the benefit of the bequest, it is good. On the contrary, if there be no ascertained beneficiary, no definiteness of purpose will raise a trust. As was said by Tucker, J., in the case of *Galigo Ex'rs v. Attorney-General*, 3 Leigh, 457: 'In the eye of the law, the intervention of a trustee does not remove a single difficulty. There is no more necessity for a properly defined grantee in a deed, than for a *cestui que trust* capable of taking, and so defined and pointed out, that the trust will not be void for uncertainty. In short there cannot be a trustee, without a *cestui que trust;* and if it cannot be ascertained, who the *cestui que trust* is, it is the same thing as if there was none.' There being a sufficient declaration of the use, and a certain beneficiary ascertained, the presence or absence of a trustee in the limitation will make no difference, for equity will not allow a gift to fail for want of a trustee.

" . . . If there is a single postulate of the common law established by an unbroken line of decision, it is that a trust without a certain beneficiary who can claim its enforcement, is void, whether good or bad, wise or unwise.

" . . . A trustee is not necessary to the validity of a trust, for a use being well declared, the law will find a trustee wherever it finds the legal estate; and the definiteness of the *purpose* of the trust does not make a good use, if there is no definite object or beneficiary." (This decision was rendered prior to the enactment in New York State of the statute excepting trusts for charitable purposes or uses from the general rule applicable to trusts.)

The rule that a trust without a certain beneficiary who can claim its enforcement, is void, has been uniformly followed in this State. In *Randolph v. Wilkinson*, 294 Ill. 508, the court said at pp. 515, 516:

"It is essential in the provision and constitution of testamentary trusts that the testator adequately indicate by the terms of his will his intention to create such a trust by using language sufficient to·sever the legal from the equitable estate, and he must with certainty identify the beneficiaries and the property out of which the trust is to take effect. . . . The use of the word 'trust' in a will is not conclusive on the question whether or not a trust is created."

In *Marble v. Estate of Marble,* 304 Ill. 229, it was said at pp. 239, 240: "Even though the intention to create a trust in a party clearly appear, if the terms by which it is created are so vague and indefinite that the court cannot ascertain clearly either its object or the persons who are to take, then the trust will be held entirely to fail. (2 Story's Eq. Jur. sec. 979a.) . . . It is always necessary to a trust that there should be a particular piece of property or a certain fund to be held or dealt with in a particular manner for the benefit of another."

In *Illinois State Trust Co. v. Jones,* 351 Ill. 498, the court said at p. 506: ''It is essential to the creation of a trust that the declaration must make reasonably certain its terms. These terms include the subject matter, the beneficiaries, the nature and quantity of the interests which they are to have and the manner in which the trust is to be performed. If any of these elements are not described with certainty no trust is created. (*Marble v. Marble,* 304 Ill. 229; *Snyder v. Snyder,* 280 id. 467.)''

We have carefully examined the authorities cited by defendant and with one exception find that they have no application to the situation here presented. Defendant cites and particularly relies upon *Detwiller v. Hartman,* 37 N. J. Eq. 347. There the testator by his will ''devised and bequeathed all his property, real and personal, to his executor, John J. Detwiller, the complainant, on the following trusts: To pay certain relatives named in the will certain specified sums of money . . . to purchase a burial plot of ground one hundred feet square in the Easton cemetery, and cause to be erected thereon a granite monument, the cost not to exceed $50,000, nor less than $40,000; the plan and style of the monument to be in accordance with directions which he intended to leave or deposit with his executor if his life and health should permit; but if he should leave none, he directed the executor to call to his aid some competent architect to act in connection with the executor, and a friend of the testator's whom he names, and who is still living, and to whom he says he has made known his wishes and plans; the monument to be built according to the plan and in the style they three may adopt. And he orders the executor to cause to be erected a substantial iron fence around the plot—sufficient to protect it and the monument. . . . He further orders that, in case his estate at his death shall not be sufficient to pay in full the legatees and the money for the cemetery plot and monument, . . . the legacies and

the monument and cemetery fund shall abate proportionately.'' In that case the court said at pp. 351, 352, 353:

''The executor asks for a construction of the will on various points: whether the trusts for the purchase of the burial plot, the erection of a monument and the erection of the fence . . . are valid. . . . He also asks that he be directed as to what sum he shall expend upon the monument and fence. . . .

''The estate of the testator, it is said, falls very short of being sufficient for the purposes which he contemplated. . . . According to the bill, the estate will not exceed $35,000. The legacies and trust funds, all together, amount to $73,100, reckoning the cost of the burial plot, monument and fence at the minimum sum fixed therefor in the will, $40,000. At the maximum sum $50,000, the legacies and trust funds amount to $83,100.

''The trust to buy a burial plot and erect a monument thereon to the memory of the testator, and to provide a fence for the plot to protect it and the monument, is valid. To hold otherwise would be to deny the right of the testator to dispose of his estate. It is conceded that a testator may make provision by his will for the erection of a memorial to himself at his grave, but his right to provide for one so expensive as that which this testator contemplated, and for which he has provided in the will under consideration, is denied. It is obvious that if the right to dispose of any part of his estate for the purpose exists, as it undoubtedly does, this court cannot limit its exercise except as the necessities of the administration may require.

''The suggestion that a much less expensive and ostentatious memorial would be more appropriate than that for which the testator has seen fit to provide, cannot enter into the consideration of the matter. The testator was the sole judge on that subject, and his judgment is not liable to be reviewed in any court. As

this court manifestly cannot deal with the provision as a violation of good taste, neither can it deal with it on the ground that it is a wasteful expenditure. As to that, too, the testator was the sole judge. In *Mellick v. President and Guardians of the Asylum,* 1 Jac. 180, where the testator (the will was made in 1784), after giving various minute directions as to his funeral, and bequeathing several pecuniary legacies, devised his freehold estates to trustees, upon trust, to sell and apply to produce as follows: £2,000 in erecting a monument to perpetuate his memory in the parish church of St. John, Southwark; £100 to Dr. Samuel Johnson on condition of his writing an epitaph for it, and twenty guineas to the rector of the parish on his consenting to the placing up of the monument, the master of the rolls, Sir Thomas Plumer said: 'Now, what are charitable uses have been numerated in the statute of Elizabeth and in Duke. They are when the donor appropriates a gift, either to charity or to some public purpose, such as the repair of bridges, ports and havens etc., not operating in any manner to the benefit of himself. But the statute of mortmain does not bear resemblance to anything like a sumptuary law, and does not apply to property expended like this—by the party on himself, for the gratification of his own vanity, or an object which, instead of having any similitude to charity, is the very reverse of it. The builder of the monument is to be paid for his labor only. It stands on the same footing as an expensive funeral, and it has never been argued that the expenses of a funeral cannot be defrayed out of real estate. There is nothing to control the general right, incident to property, of disposing of it, either in the party's lifetime or after his death, as he may think proper; and though the sum which this testator has devoted to the erection of his monument may be disproportioned to his station in life, the court cannot on any such grounds extend the construction of the statute.' *Masters v. Masters,* 1 P. Wms. 421; *Adnam v. Cole,* 6 Beav. 353; *Mitford v.*

*Reynolds,* 16 Sim. 105 and *Bainbridge's Appeal,* 97 Pa. St. 482, are also cases in which such bequests have been held valid. The testator in this case has fixed (by limitation), as he had a right to do, the amount to be expended on the burial plot, monument and fence, and his will is law on the subject. He also has provided that in case his estate should not prove sufficient to pay the legacies and raise the trust funds in full, they shall abate proportionately. The amount to be expended on the plot, monument and fence will, in the existing situation of the estate, be fixed by a very simple calculation in proportion.''

We have quoted from this case at length because it is the only case cited and the only case which, after diligent search, we have been able to find in any report of any jurisdiction in this country which deals with a similar factual situation. While in the *Detwiller* case the court did hold that.''the trust to buy a burial plot and erect a monument thereon to the memory of the testator, and to provide a fence for the plot to protect it and the monument, is valid'' and while at first blush that case might appear to sustain defendant cemetery company's position in the case at bar, it may be readily distinguished from the situation presented here. There the executor asked for a construction of the will to aid him in the administration of the estate. The question was not presented to or considered by the court in that case as to the essential elements necessary to constitute a valid trust and it is apparent from a careful examination of that decision that the question of the validity of the so-called ''trusts'' was never even considered. In reciting the purpose or object of the so-called trusts in that case, the court uses the language, ''he orders the executor'' and he ''further orders him'' to ''purchase a burial plot,'' and ''to cause to be erected thereon a granite monument,'' and ''to cause to be erected a suitable iron fence.'' It is clear from this and other language contained in the opinion in that case that the court treated the provisions of the will as to the

"trusts" merely as directions from the testator to the executor. In the *Detwiller* case the court quoted from *Mellick v. President and Guardians of the Asylum,* 1 Jac. 180. In the *Mellick* case the testator's freehold estates were devised "to trustees, upon trust, to sell and apply the produce" in erecting a monument to his memory and for the other purposes enumerated. There the court, after holding that there was no merit in the contention that a trust was established for a charitable use, stated that "the builder of the monument is to be paid for his labor only . . . it stands on the same footing as an expensive funeral." It is also clear from this language that the provision of the will there involved, purporting to create a trust, was treated as a direction to the executor to be carried out in his administration of that estate.

It is not contended by plaintiff that the provisions of the fifth paragraph of the will of the testatrix directing the erection of a monument on her cemetery lot, are invalid if the cost of such monument is considered as part of her funeral expenses. In Bogert on Trusts, it is said at p. 482 of vol. 81: "It has been rather easy to hold that a trust to provide for the construction of a monument for the settlor or for his family is a provision for the payment of the funeral expenses of the settlor and is thus valid."

Plaintiff insists that, inasmuch as the fifth paragraph of the will failed to create a valid trust, the direction of the testatrix therein contained for the erection of the monument is a matter for administration by the administrator with the will annexed under the guidance of the probate court. Expressive of her attitude in this regard the following statements appear in plaintiff's brief: "All agree that the testatrix by said provision of her will provided for the erection of a private monument on her cemetery lot, and all further agree that she had the right to make such provision. . . .

"Clearly, the dismissal of the Cemetery Company's counterclaim has not deprived it of any of the benefits it claims will accrue to it. The effect of the decree in that respect is merely to leave administration of the decedent's estate in the Probate Court, where the plaintiff contends it properly belongs. In no sense whatever, does the decree permit an unlawful distribution of the assets of the estate. . . .

"A provision in a will, directing the erection of a monument on the testator's cemetery lot, is valid as a provision for part of the decedent's funeral expenses, and the duties are those of an ordinary executor. . . .

"There is not one thing in the record, or anywhere else, to show that the 'plaintiff insists that the wishes of the testatrix be not carried out, that the monument be not built and that plaintiff get all,' but she does maintain that the appointment of a successor trustee is unnecessary in this case, either. as a matter of law or of fact."

We are impelled to hold that since defendant had no direct, actual or present interest in the subject matter of the fifth paragraph of the will and was not designated a beneficiary of the trust sought to be created thereunder, it was precluded from demanding the appointment of a successor trustee, and that the trial court properly dismissed the counterclaim. Inasmuch as the testatrix failed to establish a valid trust by the fifth paragraph of her will, the directions contained therein are properly cognizable by the probate court in its administration of her estate.

As heretofore stated, the original complaint in this cause was filed by Sarah J. Kingsley, the residuary legatee under the will of the testatrix. After said original complaint and the original answer and counterclaim had been filed, Sarah J. Kingsley died April 8, 1937. The following order was entered April 12, 1937, without any objection from defendant, Montrose Cemetery Company:

"On motion of solicitor for Maude McCahan, suggesting upon the record the death of Sarah J. Kingsley, plaintiff herein, intestate and leaving her surviving, her daughter, Maude McCahan, her only heir and next of kin; counsel for the defendant, Montrose Cemetery Company being present in open court,

"It is ordered that cause herein proceed in the name of said Maude McCahan as plaintiff."

After participating in various proceedings before the court and hearings before the master, some of which were initiated by it, defendant on October 1, 1937, in its answer to plaintiff's amended complaint, questioned for the first time the right and capacity of Maude McCahan, the substituted plaintiff, to maintain this action by alleging that "it admits that Maude McCahan has been substituted as Plaintiff by order of court and states the facts to be that said substitution was made upon verbal information furnished by attorney for original Plaintiff, Sarah Kingsley, that it has no knowledge that Maude McCahan is the daughter of Sarah Kingsley or that she is the only heir of Sarah Kingsley and asks for strict proof as to the right of the said Maude McCahan to prosecute this suit."

As to the question of the right of Maude McCahan, the substituted plaintiff, to carry on this proceeding, the special commissioner in his report found,

"That subsequent to the filing of said cause Sarah J. Kingsley died; that thereafter on motion made by counsel for plaintiff, Maude McCahan was substituted as plaintiff; that it is alleged in all subsequent pleadings that said Maude McCahan is the daughter and only legal heir of Sarah J. Kingsley, deceased; that no evidence was introduced with reference to the heirship of said Sarah J. Kingsley and your special commissioner therefore does not find that Maude McCahan is or is not the only heir-at-law of Sarah J. Kingsley, deceased." Except for the finding therein that the court had jurisdiction of all the parties, the decree is

silent on the question of the right of the substituted plaintiff to proceed with this suit.

Inasmuch as the only relief sought by plaintiff was the proper construction of the will for the guidance of the administrator with the will annexed in his administration and distribution of the assets of the estate of Minnie V. Billings, deceased, and, inasmuch as the said administrator is a party to this cause, we deem it unnecessary to determine the question of the right and capacity of Maude McCahan to proceed with this action. The substituted plaintiff neither asked for nor received any direct relief by the decree of the trial court and it is safe to assume that in his administration and distribution of the assets of the Billings estate the public administrator under the direction of the probate court will recognize no one who is not legally entitled to share in said distribution.

The decree allowed as attorney fees, $650 to defendant and counterclaimant Montrose Cemetery Company, $100 to defendant Martin J. O'Brien, as administrator with the will annexed of the estate of Minnie V. Billings, deceased, and $500 to Maude McCahan, the substituted plaintiff, and ordered "that Martin J. O'Brien as Administrator with the will annexed of the estate of Minnie V. Billings, deceased, be and he is hereby authorized to pay such sums to the said parties, respectively, out of the residuary assets of said estate and to take credit therefor in his account as such administrator." Plaintiff filed a cross appeal from that portion of the decree which allowed attorney fees to the parties and which authorized the payment thereof out of the residuary assets of the estate.

Plaintiff contends that the court erred in allowing "attorneys' fees to defendant, Montrose Cemetery Company for service in connection with any matter other than construing the effect of the perpetual care agreement on provision 'Fourth' of the will"; in allowing "any attorneys' fees in connection with that part

of the case relating to the counterclaim for the appointment of a successor trustee''; in ordering ''allowance for attorneys' fees paid out of the residuary assets of the estate''; and in not ordering ''allowance for attorneys' fees paid out of the fund provided for in provision 'Fourth' of the will.''

When the matter of the allowance of attorney fees to defendant Montrose Cemetery Company was before the chancellor and he allowed $650 as such, payable out of the residuary assets of the estate, plaintiffs attorney did interpose the objection ''that the counterclaim is filed by the defendant solely for its own purpose . . . and was not in any way for the benefit of the administrator of the estate or for the administration of the estate.'' However, immediately thereafter plaintiff's attorney stated that he had no objection to the allowance of attorney fees to the administrator payable out of the residuary assets, and he also stated, ''I would like to ask, if we are allowing fees, that the attorney for the plaintiff be allowed a fee under the decree on that basis.'' Inasmuch as plaintiff's attorney specifically requested an allowance of $500 attorney fees for himself out of the residuary assets and stated that he had no objection to the allowance of attorney fees to the administrator out of the same fund, in our opinion plaintiff must be held to have waived her objection to the payment of the attorneys' fees out of the residuary assets. No question is raised as to the reasonableness of the fees allowed. There can be no question that the attorney for the Montrose Cemetery Company devoted a great amount of time and effort in resisting plaintiff's claim that the trust provided for in the fourth paragraph of the will was ''wholly ineffective'' and in attempting to show under its amended counterclaim that a valid trust was created by the fifth paragraph of the will. It is idle for plaintiff to argue that the cemetery company was not entitled to the allowance of any attorney's fee under its counterclaim because it did not

specifically ask for a construction of the fifth paragraph of the will but merely for the appointment of a successor trustee. The construction of the fifth paragraph of the will was directly involved inasmuch as the court could not appoint a successor trustee unless a valid trust was established by the provisions of said paragraph. Not only did the provisions of the fifth paragraph of the will create a difficulty that necessitated a construction of that paragraph, but the precise question of construction under a similar set of facts has not previously, in so far as we have been able to ascertain, been presented for determination to any court of review in this State. "As a general rule, if a testator has expressed his intention so ambiguously as to create a difficulty, which makes it necessary to come into the court of chancery to give a construction of the will or to remove the difficulty, the cost of the litigation must be borne by the estate." *Woman's Union Missionary Soc. of America v. Mead,* 131 Ill. 338. In *Ingraham v. Ingraham,* 169 Ill. 432, the court said at pp. 471, 472:

"The court below in its decree allowed one of the counsel of the appellant a fee of $1000 and the other counsel a fee of $500. Counsel for the appellees objects to the allowance of those fees. In view of the ruling of this court in *Woman's Union Missionary Society v. Mead,* 131 Ill. 338, we do not regard the allowance of the fee as erroneous. The will as amended asked for a construction of the fourteenth clause. There is sufficient ambiguity about the language of the testator to justify an application to a court of equity for a construction of the clause in question. It is a general rule that, when the testator has expressed his intention so ambiguously as to create a difficulty, which makes it necessary to go into a court of chancery to get a construction of the will, and to remove the difficulty, the costs of litigation must be borne by the estate; and the general residue is the primary fund for the payment of such costs. The amount to be allowed is so

far in the discretion of the chancellor, that, in the absence of proof of the abuse of that discretion, we cannot interfere.''

We think the attorneys' fees allowed were reasonable and that the court properly ordered them paid out of the residuary assets of the estate.

For the reasons stated herein that portion of the decree of the superior court from which the appeal was taken is affirmed and that portion of the decree from which the cross appeal was taken is also affirmed.

*Those portions of decree from which appeal and cross-appeal were taken affirmed.*

FRIEND and SCANLAN, JJ., concur.