Joseph R. Guttman, Plaintiff-Appellant, v. Joseph R. Guttman, Administrator of the Estate of Elza Guttman, Deceased, Defendant-Appellee.

Gen. No. 50,028.

First District, Third Division.

November 4, 1965.

Joseph R. Guttman, of Chicago, pro se.

Eugene Lieberman, of Chicago, for appellee.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

The title of this case is incorrect. However, the above title appears upon the briefs of the appellant and we feel constrained to follow it. The so-called plaintiff is not a lawyer but he has filed his briefs pro se and it would appear from the title that he is suing himself. In this opinion Joseph R. Guttman will be referred to as the plaintiff.

The litigation involved herein covers a great many years, many law suits and appeals. Guttman v. Schiller,

23 Ill2d 323, 178 NE2d 387; Guttman v. Estate of Gutt-man, 28 Ill App2d 85, 170 NE2d 40; Guttman v. Schiller, 39 Ill App2d 58, 187 NE2d 315. Most of the facts relating to this litigation are set forth in Guttman v. Schiller, supra.

The plaintiff in this case contends that the trial court erred in entering an order on September 2, 1964, upon a petition filed by him, ordering that leave to reopen the estate of Elza Guttman, deceased, be denied, and further providing that Joseph Guttman be ordered and directed to refrain from filing any other documents, petitions and notices in this cause except only such notices or requests as may be necessary to perfect an appeal from that order to an appropriate court of review. His contention is that he has been deprived of some constitutional rights by the foregoing order in that he claims that he has a right to represent himself in court, and that this right has been denied him.

A joint will was executed by Bernard and Elsie Guttman (Elsie Guttman was also known as Elza Guttman), the father and mother of the plaintiff in 1929, under which after the death of both the whole of their property would go in equal shares to Joseph, the plaintiff herein, and their other son, Morris Reese Guttman. Their daughter by that will was specifically disinherited. The father died in 1930 and the will was admitted to probate in Cook County, Illinois. In 1931 the mother renounced the will and received her statutory portion of the estate. The mother died in 1953 in Arizona, where she had lived for many years. She and her daughter had been reconciled and in a will executed shortly before her death she named the daughter as her sole beneficiary. There was some doubt under Arizona law whether the sons would get anything, and a will contest seemed inevitable. In order to avoid a contest Joseph, the plaintiff, and Morris, his brother, and Barbara, the sister, entered into a full settlement and compromise of all their claims.

46

This settlement agreement was filed in the Superior Court of Arizona in October 1953. Under the settlement agreement it was stipulated that the mother's estate would be distributed one-third to each of the children, but that Barbara be permitted to retain certain assets therein specifically set forth. While the estate was pending in Arizona, ancillary proceedings were commenced in the Probate Court of Cook County. The ancillary administrator cited Joseph for having withdrawn funds from his mother's bank account. He contended that the funds were trust property. The probate court found that the funds belonged to the estate and Joseph was ordered to return them. Joseph then filed a claim against the estate in the ancillary proceeding asserting that trust funds had been commingled with assets of the mother's estate, and that Morris, the administrator, had failed to turn over to him as trustee all of the proceeds of that estate but had transferred those trust funds to their mother. This claim was disallowed.

Another settlement was reached and on June 5, 1956, the Probate Court of Cook County entered an order, which was approved by Joseph and Morris, and by Joseph's attorney, which found that "all matters heretofore in dispute have been settled"; that the parties were to cooperate in the sale of the mother's home in Arizona and the proceeds of that sale and of her estate in Cook County were to be divided equally among the three heirs.

Notwithstanding these settlements made in Arizona in October 1953, and in the Probate Court of Cook County in June 1956, Joseph filed a petition in January 1957, and again in 1958, in the Probate Court of Cook County, to have the orders entered in 1956 set aside. His motion was denied and he appealed first to the circuit court and then to the Supreme Court, which court transferred the case to the appellate court, and is reported under the title of Guttman v. Estate of Guttman, supra. The appellate court in that case affirmed the circuit court,

which had found that the probate court had jurisdiction to enter the orders complained of. In Guttman v. Schiller, Joseph again contended that the 1956 orders of the probate court were void, and in that case the court said: "It is but one of many contentions, going back as far as the renunciation of the will in 1931, which are raised in this appeal." 39 Ill App2d 58, 64, 187 NE2d 315.

In the case of Guttman v. Schiller, supra, it is stated that Joseph contended "that when he approved the Probate Court orders of 1956, orders which were prepared by his own attorney, he only knew and did what he was told. However, the master, who held more than 20 hearings and heard over 1100 pages of testimony and argument, found that he did not enter into the agreements blindly, or because of deception or overreaching. The master found that they were entered into voluntarily and for adequate consideration." 39 Ill App2d 58, 65, 187 NE2d 315.

The master's findings were approved by the trial court and the appellate court found them not to be against the manifest weight of the evidence.

The appellate court in that same opinion concluded that the 1956 probate court settlement constituted a valid agreement, and that the petitioner, having entered into it of his own accord, is bound by it and is barred from asserting his present claim.

The ancillary proceedings were opened in Cook County, Illinois, case No. 54P 3891. The final account in that estate was approved on November 16, 1956. The plaintiff herein opened a new estate for his mother, Elza Guttman, in the Probate Court of Cook County under case No. 56P 6627. Thereafter he opened a third estate for the same decedent bearing number 63P 670 in the Probate Court of Cook County, in which sworn petition he stated that Elza Guttman was a resident of the city of Chicago in the county of Cook and State of Illinois at the time of her death. The petitioner well knew that his mother's

48

estate had been administered in Arizona, and that his mother had lived there for many years prior to her death. This last estate was opened despite the fact that on August 6, 1956, a stipulation was entered into which was approved by the probate court in Tucson, Arizona. It was agreed that in compromise of all existing will contest actions between the parties involving several alleged wills of the decedent, the estate was to be equally divided between the three heirs. The Probate Court of Cook County, when the second probate proceedings were filed in Cook County, entered an order on August 6, 1956, finding that there was a prior estate pending for the same decedent, No. 54P 3891, and that the stipulation between all three heirs was in full force and effect. The order further denied the petition to admit an alleged will to probate in that proceeding, denied the petition for the appointment of an administrator to collect, and ordered the estate closed. The court also found that Benjamin H. Feldman, an attorney, was in open court at that hearing on behalf of Joseph Guttman, and that Joseph Guttman was personally present.

In 1963 the plaintiff filed his new petition to open a new estate for the same decedent under No. 63P 670, wherein he sought to probate an alleged new will, which, if probated, would distribute the estate equally among the three children, which had already been done by the probate court in Tucson, Arizona, many years previously. The record also indicates that at the time of the execution of the new will the decedent had been previously declared an incompetent.

The plaintiff herein has filed countless petitions in all three of the estates opened in the Probate Court of Cook County for the same decedent, none of which bear mentioning but all of which no doubt were prompted by his desire to harass his brother Morris.

Attorney Eugene Lieberman filed a sworn answer to a petition filed against him on October 4, 1960, in case No.

54P 3890 (correct number 3891), in which petition the plaintiff asked that an attachment be issued against Mr. Lieberman and that he be compelled to produce a proper and later will of Elza Guttman dated July 8, 1953. In his sworn answer Mr. Lieberman stated that upon inquiry made by him of Joseph R. Guttman as to why he wanted that will, inasmuch as the estate was being probated pursuant to the agreement of October 2, 1955, which agreement provided for distribution in an identical manner to the provisions set forth in the will of July 8, 1953, Joseph R. Guttman said as follows: "I'm going to file petitions and I'm going to get what I want and if I lose I'll file new petitions until I get my dear brother and sister and you too, Mr. Lieberman, and every time I lose, I'll get a new lawyer and start again. I'll hound you to your graves." This sworn answer by Mr. Lieberman does not appear to have been denied any place in the record.

In probate No. 63P 670 the same Eugene Lieberman, attorney for Morris R. Guttman, filed a sworn answer to a petition filed by the plaintiff, wherein Mr. Lieberman stated that on repeated occasions Joseph R. Guttman made threats to Mr. Lieberman and to his client, Morris R. Guttman, as follows: "I will bring one lawsuit after another and one petition after another, and if I lose, I'll never stop until you pay me what I want." This statement, likewise, does not appear to have been denied.

After opening the second estate for the same decedent in 1956, No. 56P 6627, and after that estate had been closed on May 8, 1958, the plaintiff obtained subpoenas duces tecum against numerous persons including his brother Morris R. Guttman. In the subpoena duces tecum directed to Morris R. Guttman he was asked to produce "court actions from the day Bernhard Guttman died to the present time in relation to the trust of Bernhard Guttman. . . . Passport as well as receipts showing when in July of 1953 M. Reese Guttman (Morris) flew to

50

Europe and what date he returned." The subpoena duces tecum also directed M. Reese Guttman (Morris) to produce $250,000 as well as documents that would have absolutely no bearing on the estate involved, and covered a period from 1937 to the 8th day of May 1958. When this matter was called to the court's attention the probate judge admonished the plaintiff not to obtain or serve any further subpoenas duces tecum without first obtaining an order of court. However, on January 24, 1963, he obtained and served another subpoena duces tecum against the law firm of Jacobs and Lieberman in probate estate No. 54P 3891, which estate had been closed many years before.

It would serve no useful purpose to mention the numerous petitions filed by the plaintiff in the various estates even after the estates had been closed.

On September 2, 1964, the court entered an order, after the plaintiff had opened the third estate for the same decedent No. 63P 670, in which the court found, among other things, that the estate of Elza Guttman was first opened in the probate court in case No. 54P 3891; that an estate was also opened for Elza Guttman in the year 1956, identified as No. 56P 6627, and that a further estate was opened in the Estate of Elza Guttman identified as No. 63P 670. The court found from its records that an order was entered in case No. 56P 6627 on the 6th day of August 1956, finding that there was a prior pending estate identified as No. 54P 3891, and ordering that the petition to admit the alleged will of Elza Guttman be denied probate and ordering the estate in case No. 56P 6627 closed. The court also found that in case No. 63P 670 an order was entered on the 12th day of December 1963, to the effect that No. 63P 670 had been consolidated with No. 54 P 3891, both of said estates involving the same decedent, Elza Guttman, and that order further provided that the estate of Elza Guttman shall remain closed. The probate court in that order

51

set forth the following: "It is further ordered that this estate is closed and that this order applies to 54P 3891 and 63P 670 consolidated under case No. 54P 3891." The court further found in that order that none of the matters presented by Joseph Guttman in any capacity set forth any basis in law for the entry of an order reopening the estate identified as 56P 6627, or any other estate of Elza Guttman, deceased. The court went on to find that the continuous presentation of documents, notices and petitions by Joseph Guttman in the estates that had heretofore been closed tended to interfere with the orderly administration of justice in that court. The court thereupon ordered that leave to reopen the estate be denied and that Joseph Guttman be ordered and directed to refrain from filing any other documents, petitions and notices in that cause except only such notices or requests as may be necessary to perfect an appeal from that order to the appropriate court of review. It is from that order the plaintiff appeals.

Joseph R. Guttman contends that he was denied his constitutional right to a fair trial; that he was denied his day in court and the benefit of the general law. He cites from the Illinois Constitution and the Constitution of the United States in support of his contention that he was denied his constitutional rights.

From an examination of the record in this case, as well as the abstract and briefs, Joseph R. Guttman had made up his mind to follow a course of harassment and he will not be stopped by prior decisions of this court or by the orders entered against him in the trial court. Each time the court denied one of his petitions he followed that up by either filing a new petition asking for the same relief, either in the same probate proceeding, or by opening a new estate and filing the petition under a different number, although each estate is that of the same decedent. It would appear that this was an attempt by Joseph Guttman to evade previous orders entered by

52

the court which orders would not be found in the file bearing the new estate number.

 The trial court from the record has been most tolerant, enduring and indulgent. The court has with patience and forbearance given Joseph Guttman a hearing on each of his petitions and in every case the petitions were properly found to be without merit. We see no constitutional question in this case, for no man has a constitutional right to maintain vexatious or harassing litigation, and no man, whether he be lawyer or layman, has a constitutional right to interfere with the orderly administration of justice in a court of law. The trial court in its order of September 2, 1964, found that the continuous presentation of documents, notices and petitions by Joseph Guttman in the estates that have heretofore been closed tends to interfere with the orderly administration of justice in that court.

The plaintiff also contended in his final petition that the order entered on August 6, 1956, which recited that Benjamin H. Feldman of 208 South LaSalle Street, was in open court for this hearing on behalf of Joseph Guttman, and that Joseph Guttman was personally present, was false, and that order did not come to his attention until July 8, 1964. A complete answer to this tardy contention is that the plaintiff has lost nothing, even if the allegations in his petition, to the effect that he was not present and that his attorney, Benjamin H. Feldman, was not present, were true. The estates were closed pursuant to a stipulation entered into by the plaintiff covering the distribution to be made of the assets of his mother's estate. This stipulation was adhered to. Furthermore, it is doubtful that the plaintiff did not know of the entry of this order on August 6, 1956, ordering the estate closed, for if he thought the estate was still open why did he file a petition to open a new probate estate in 1963 under number 63P 670?

■ The petition upon which the appealed order was entered was in the nature of a petition under section 72 of the Civil Practice Act and was filed on July 21, 1964, in an effort to vacate an order entered on August 6, 1956. Under section 72 a party seeking relief after term time must file his petition within two years. Irving v. Rodriquez, 27 Ill App2d 75, 169 NE2d 145. Ill Rev Stats 1963, c 110, § 72.

The so-called plaintiff in this case failed to make a case in the trial court as he has failed here.

The defendant herein has filed two motions to dismiss this appeal, both of which motions were taken with the case. While this court felt that the motions of the defendant were well taken, in view of this opinion it is unnecessary for this court to pass upon said motions.

The order of court denying the petition of the plaintiff under section 72 of the Civil Practice Act is in all respects affirmed.

Order affirmed.

DEMPSEY, P. J. and SCHWARTZ, J., concur.