JAMES FRANKLIN CARTER *et al.* Appellants, *vs.* CHARLES
CARTER *et al.* Appellees.

*Opinion filed June 18, 1908.*

1. WILLS—*estates will vest at death of testator unless some later
time is clearly intended.* Estates devised will vest in interest at the
death of the testator unless some later time for their vesting is
clearly expressed by the words of the will or by necessary implica-
tion therefrom.

2. SAME—*when remainder is vested.* Whenever the person who
is to succeed to the estate in remainder is in being and ascertained,
and the event, which by express limitation will terminate the pre-
ceding estate, is certain to happen, so that the estate in remainder
is ready at any time to come into possession if the prior estate shall
end, the remainder is vested.

3. SAME—*distinction between vested and contingent remain-
ders.* The uncertainty which distinguishes a contingent remainder
from a vested remainder is not whether the remainder-man will
live to enjoy the estate, but whether he will ever have the right to
such enjoyment.

4. SAME—*intention to disinherit grandchild if its parent should
die will not be presumed.* In construing a will it will not be pre-
sumed that it was the intention of the testator, in providing for his
children, to prevent his bounty from extending to his grandchildren
and to disinherit a grandchild whose parent should happen to die
during the continuance of a preceding life estate, although such in-
tention, if expressed, will be carried out.

5. SAME—*will construed as creating vested remainder.* A will
devising to the testator's second wife the use and control of certain
real estate for life, and should she re-marry the rents to be appro-
priated for the support and education of her children by the testa-
tor, (naming them,) and at her death "said land to be equally di-
vided, in parcels or value, amongst the above mentioned children,"
creates a vested remainder in such children.

6. SAME—*exception to rule that gift to class, by mere direction
to divide property, postpones vesting until distribution.* The rule
that where the devisees compose a class, and there are no words of
devise except a simple direction to divide the property at a speci-
fied time, the gift does not vest until the time of distribution, is
subject to the exception that where the distribution is not postponed
for reasons personal to the devisees, but merely to let in a life es-
tate, the gift vests at once.

7. SAME—*when vesting of estate in remainder is not affected though will creates a trust.* A provision in a will that if the testator's widow, to whom he had given a life estate in certain land, should re-marry, the rents of the land should be appropriated to the support and education of certain named children and at her death the land to be divided amongst such children, even if it creates a trust in the event of the re-marriage of the widow, does not prevent the vesting of the remainder.

8. DESCENT—*in descent of property there is no distinction between kindred of the whole and the half blood.* The provision of clause 5 of section 1 of the Statute of Descent that "in no case shall there be any distinction between the kindred of the whole and the half blood," is not limited to such clause alone, but abrogates entirely, in all cases, the common law rule that kindred of the half blood could not inherit.

9. PARTITION—*when the complainants cannot be reimbursed for improvements.* Complainants in a partition proceeding are not entitled to be reimbursed for improvements placed by them upon the land while they were in exclusive possession thereof under the life tenant, who was entitled to its possession, as their rights in that respect are no greater than those of the life tenant, even though they had at the time a vested remainder, with other persons, in the land. (VICKERS, J., dissenting.)

APPEAL from the Circuit Court of Vermilion county; the Hon. E. R. E. KIMBROUGH, Judge, presiding.

In 1866 William G. Carter departed this life testate. He had been married twice, and left surviving him his widow, Mary Jane, and seven children of his second marriage, namely, Amanda Ann, Solon, Lucullus, Elijah, James Franklin, Erasmus and Vanando; also six children of his first marriage and one child of a deceased daughter of the first marriage. The first paragraph of his will was as follows:

"*First*—I give and bequeath to my wife, Mary Jane, the full use and control of the following described real estate situated in Champaign county, in the State of Illinois, to-wit, (describing the 260 acres in controversy in this case,) during her natural life, to use and occupy as she sees fit. Should she again marry, it is my will that the rents of the above described lands be appropriated for the support and

education of the following heirs, children of said Mary Jane Carter and myself: Amanda Ann, James Franklin, Solon, Erasmus, Vanando, Lucullus and Elijah, and at the death of the said Mary Jane Carter said lands to be equally divided, either in parcels or value, amongst the above mentioned children; and also all the personal estate, moneys and credits, of every kind whatsoever, I may have on hand, except one yearling dun mare colt, which I give and bequeath to my son James F. My wife paying out of the proceeds of said personal effects any and all just debts that I may be owing, particularly three promissory notes payable to Charles G. Yount, which notes are secured by a mortgage on the lands above described, for $666.66 each, and payable first October, 1865, 1866 and 1867."

Subsequent to the death of the testator, and prior to the death of the widow, four of the children of the second marriage died intestate, unmarried and without issue, namely, Amanda Ann, Solon, Lucullus and Elijah. On March 16, 1880, after the death of Amanda Ann and Solon, James Franklin conveyed to Lucullus and Elijah, who thereafter died, and to Erasmus and Vanando, all of his interest in the premises in question except twenty acres, together with all right or interest he might thereafter acquire therein.

Mary Jane Carter died December 30, 1905, never having re-married, and at the May term, 1906, of the circuit court of Vermilion county, the three surviving children of the second marriage, James Franklin, Erasmus and Vanando, filed their bill, in which they set out the above facts, and alleged that it was the intention of William G. Carter that the lands given to the second family should descend to the children of himself and the said Mary Jane as a class, and should not vest in them until the death of Mary Jane, and with that end in view he executed the first clause of the will above set forth; that prior to the death of Mary Jane, Erasmus and Vanando, believing that they, with James Franklin, were to be the owners of the premises un-

der the will, in anticipation thereof, and while they were occupying the same as tenants of their mother, erected dwelling houses, barns and other structures, and made other improvements thereon, at their own expense, which have increased the value of the premises $12,000, which increase rightfully belongs to the said Erasmus and Vanando; that after the death of their mother and prior to the filing of the bill, James Franklin had by his agreement in writing conveyed all his interest in the premises to Erasmus and Vanando, and that the three surviving heirs of the second marriage by the death of their mother became vested, as tenants in common, with the fee to said premises. The prayer of the bill was for a partition, and that the children of the first marriage, who were made parties defendant to the bill, be decreed to have no interest in the premises.

The defendants filed their answer, admitting the execution of the will and all of the facts set forth in the bill except those in regard to the improvements placed upon the premises and the intention of the testator as to the vesting of the interests of the children of the second wife, disputing appellants' construction of the will, claiming that the children of the second wife took vested interests under the will, and that upon the death of those who had died, the defendants, as half-brothers and half-sisters and descendants of half-brothers and half-sisters, had inherited shares of the deceased children's interest in the premises. The defendants also filed a cross-bill setting up the same matters as alleged in their answer, and praying for partition of the premises in accordance with their alleged interests.

Upon a hearing upon the pleadings and evidence the court entered a decree dismissing the bill for want of equity, decreeing partition on the cross-bill in accordance with the interests as therein set forth, and refusing Erasmus and Vanando any compensation for their improvement of the premises, from which decree the complainants in the original bill perfected an appeal to this court.

RAY & DOBBINS, for appellants.

FRANK H. BOGGS, (F. E. WILLIAMSON, of counsel,) for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The questions arising on the record are: (1) Did the children of the second marriage take a vested interest under the will? (2) Did the children of the first marriage inherit from the deceased children of the second marriage? (3) Are appellants entitled to an allowance for their improvements?

*First*—The law favors the vesting of estates at the earliest possible moment, and estates devised will vest in interest at the death of the testator unless some later time for their vesting is clearly expressed by the words of the will or by necessary implication therefrom. (*Scofield* v. *Olcott,* 120 Ill. 362; *Kellett* v. *Shepard,* 139 id. 433; *Grimmer* v. *Friederich,* 164 id. 245; *Knight* v. *Pottgieser,* 176 id. 368.) There is no language in the will indicating an intention that the devise to the children should be contingent upon their surviving their mother. A contingent remainder is one limited to take effect either to an uncertain person or upon an uncertain event. It is limited by the instrument creating it either to a person not yet ascertained or not in being, or so as to depend upon an event which may never happen. It is an estate which is not ready to come into possession at any moment when the prior estate may end. On the other hand, if the estate is at any time ready to come into possession provided the prior estate should end, then it is a vested estate. Whenever the person who is to succeed to the estate in remainder is in being and is ascertained and the event which by express limitation will terminate the precedent estate is certain to happen, the remainder is vested. The uncertainty which distin-

guishes the contingent from the vested remainder is not the· uncertainty whether the remainder-man will live to enjoy the estate, but whether he will ever have the right to such enjoyment. (*Harvard College* v. *Balch,* 171 Ill. 275; *Hinrichsen* v. *Hinrichsen,* 172 id. 462; *Hawkins* v. *Bohling,* 168 id. 214; *Ducker* v. *Burnham,* 146 id. 9.) Here the persons to whom the remainder was given,—the seven children of the second marriage,—were mentioned by name. They were in being and were ascertained. There was no uncertainty as to the persons who should take the remainder, and they had a present capacity to take it at the death of the testator if,the life estate to his widow had then terminated. Neither was there any uncertainty as to the time. The death of the widow was·certain to happen and the particular estate would be.thereby terminated.

It is insisted, however, that a consideration of the whole will indicates a manifest intention on the part of the testator that the interests should not vest until the death of his widow; that the only words of gift are contained in the direction for the division of the property after her death; that the property was intended to be distributed among the children of the second wife as a class, and that only such members of the class as were alive at the time of division were entitled to share in the distribution. By the provisions of his will, outside of the paragraph under consideration, the testator devised his other real estate, about 168 acres, to the children of the first marriage and the grandchild in fee, providing for the equalizing of the shares by the payment of money by two of the children who had received small advancements. Their interests vested at once, and in case of the death of any of them the children of the second marriage would have inherited from such deceased child to the same extent that the children of the first marriage now claim to inherit from those of the second. There was no distinction in the testator's treatment of the children of his two marriages, except that on account of the necessity

of making provision for the second wife he postponed the distribution of the portion of the property destined for the children of the second marriage until the termination of the life estate which he gave his wife therein. We see no indication in the plan of the testator for the distribution of his estate, or in the language of his will, considered in the light of the circumstances of his situation, of any intention that the vesting of the interests of the children of the second marriage should be postponed until after the death of the widow.

The appellants invoke the general rule that where the devisees compose a class and there are no words of devise except a simple direction to divide the property at a specified time, the gift will not vest until the time of division. (*McCartney* v. *Osburn*, 118 Ill. 403; *Kingman* v. *Harmon*, 131 id. 171.) The fact that the children are mentioned by name indicates that they were intended to take as individuals and not as a class. But conceding that the devise is to a class and is simply a direction to divide the property at an appointed time, it is said in *Knight* v. *Pottgieser*, 176 Ill. 368, that this "general rule is subject to an exception so well established and universally recognized as to practically constitute another general rule, which is: Though a gift arises wholly out of directions to pay or distribute *in futuro*, yet if such payment or distribution is not deferred for reasons personal to the legatee, but merely because the testator desired to appropriate the subject matter of the legacy to the use and benefit of another for and during the life of such other, the vesting of the gift in remainder will not be postponed but will vest at once, the right of enjoyment only being deferred." (*Scofield* v. *Olcott, supra; Grimmer* v. *Friederich, supra; Carper* v. *Crowl*, 149 Ill. 465.) The devise here is within this exception. The only object in postponing the division of the estate was that the widow might enjoy it during her lifetime or widowhood.

234—33

It is contended that the testator created a trust by these words in his will: "Should she again marry, it is my will that the rents of the above described lands be appropriated for the support and education of the following heirs, children of the said Mary Jane Carter and myself: Amanda Ann, James Franklin, Solon, Erasmus, Vanando, Lucullus and Elijah, and at the death of the said Mary Jane Carter said lands to be equally divided, either in parcels or value, amongst the above mentioned children," and that the title did not vest in the children until the time of distribution. Whether a trust was created by the language above quoted or not, the vesting of the estate in remainder is not affected thereby. "Where a testator devises land to trustees until A shall attain the age of twenty-one years, and if or when he shall attain that age then to him in fee, this is construed as conferring on A a vested estate in fee simple, subject to the prior chattel interest given to the trustees, and, consequently, on A's death under the prescribed age the property descends to his heir-at-law." (1 Jarman on Wills, 734; *Boraston's case,* 3 Coke, 19; *Doe* v. *Ewart,* 7 Ad. & El. 636.) A trust for one until he attains twenty-one, then to pay over, with a gift of the income for maintenance meanwhile, is vested. (*Ordway* v. *Dow,* 55 N. H. 11.) Other cases to the like effect are *Tucker* v. *Bishop,* 16 N. Y. 402; *Verrill* v. *Weymouth,* 68 Me. 318; *Lowe* v. *Barnett,* 38 Miss. 329; *Paterson* v. *Ellis,* 11 Wend. 259; *Provenchere's Appeal,* 67 Pa. St. 463; *VanWyck* v. *Bloodgood,* 1 Bradf. (N. Y.) 154. A bequest given by a direction to pay when the legatee attains a certain age, the income being given to the legatee in the meantime, is a present gift, which vests ˙ in interest at the testator's death. *Cropley* v. *Cooper,* 19 Wall. 167.

According to the contention of appellants, if any of the children of the testator's second marriage named in his will had died in the lifetime of their mother, leaving children, such children could have taken no benefit from the provi-

sion made for the parent. It cannot be supposed that it was the intention of the testator, in providing for his children, to prevent his bounty from extending to his grandchildren, and to disinherit a grandchild whose parent should happen to die before the termination of the widow's life estate. Such intention, if expressed, must be carried out,· but it will not be presumed; and this consequence, unless there is a different intention expressed, is conclusive in favor of the construction that the estate is vested. *Cropley* v. *Cooper, supra; Carver* v. *Jackson,* 4 Pet. 1 ; *Goodtitle* v. *Whitney,* 1 Bur. 234; *Doe* v. *Perryn,* 3 T. R. 495.

*Second*—The estate of the four children of the second marriage who died intestate, unmarried and childless, descended under the second clause of section 1 of the Statute of Descent. It is claimed by appellants that the children of the first marriage took nothing because the provision abrogating the distinction between kindred of the whole and the half blood does not apply in cases arising under the second clause of that section, but only in cases arising under the fifth clause, of which that provision is a part. It is said that the provision is in derogation of the common law and to be strictly construed, and being a part of an independent clause modifies that clause only, and not the whole section. The provision that in no case shall there be a distinction between the kindred of the whole and the half blood in the descent of property was incorporated into the law of this State by the Statute of Wills, approved January 23, 1829. Section 43 of that statute consists of a single sentence directing the manner in which intestate estates shall descend, being, in substance, the introductory clause and clauses numbered 1, 2, 3 and 5 of section 1 of the present Statute of Descent, the sentence concluding with the words:· "And in no case shall there be a distinction between the kindred of the whole and the half blood, saving to the widow, in all cases, her dower of one-third part of the real for life and the one-third of the personal estate

forever." This language abrogated entirely, in all cases, the common law rule that kindred of the half blood could not inherit. The revision of 1845 made no material change in the language, though it numbered the section 46 and broke it into two sentences, the first ending with the second clause of the present section. The act of 1872 changed the wording of the section somewhat, numbered the clauses and added clauses 4, 6 and 7, but no act has in any way modified the removal of the disability of the kindred of the half blood by the act of 1829. The case of *Oglesby Coal Co.* v. *Pasco,* 79.Ill. 164, is in accordance with this view.

*Third*—The improvements placed upon the lands by the appellants were placed there during the life of their mother, who was entitled to the possession of the land as life tenant. Their possession was not that of co-tenants with the other owners, but was exclusive under the life tenant. Their right was no greater than hers, and the rule is that a life tenant cannot, by placing permanent improvements on land, however much they may enhance its value, create a charge against the remainder-man. Such improvements will be deemed to have been made for his own benefit during the existence of his own estate, and upon its termination, being a part of the realty, they will go, as such, to the remainder-man, who will take them without any liability to re-imburse the life tenant. *Hagan* v. *Varney,* 147 Ill. 281; *Chilvers* v. *Race,* 196 id. 71.

The decree of the circuit court will be affirmed.

*Decree affirmed.*

Mr. JUSTICE VICKERS, dissenting:

I dissent from that portion of the majority opinion by which re-imbursement is denied to Erasmus and Vanando Carter for the improvements placed by them upon the property in question while they were in possession thereof as tenants in common of their mother, the life tenant.