Morris Reese Guttman, Individually and as Administrator of the Will Annexed of the Estate of Bernard Guttman, Deceased, etc., et al., Plaintiffs-Appellees, v. Jay A. Schiller, Joseph Reese Guttman and Elsie Guttman, etc., et al., Defendants-Appellants.

Joseph Reese Guttman, Petitioner-Appellant, v. Morris Reese Guttman, et al., Respondent-Appellee.

### Gen. No. 48,710.

First District, Third Division.

January 9, 1963.

Rehearing denied January 31, 1963.

 

Alfred M. Loeser, of Chicago, for defendants-appellants, and for petitioner-appellant.

Eugene Lieberman, of Chicago, for respondents-appellees.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

The above captioned case, involving a testamentary trust, was opened in 1930. The present action arises from a petition filed in 1957 by Joseph Reese Guttman (Joseph), the trustee and a beneficiary of the testamentary trust which was created by his father and mother, Bernard and Elsie Guttman. The senior Guttmans executed their joint will in 1929 giving to each other all right, title and interest in their property for life with the provision that after the death of both the whole of their property would go in equal shares to Joseph and their other son, Morris Reese Guttman (Morris). Their daughter, who is now Mrs. Barbara Prunier (Barbara), was specifically disinherited because she married ouside of the Jewish faith.

The petition, to enforce the trust, alleged that Barbara had trust property which was given to her by the mother, and that Morris had trust property which had been retained by him as administrator of the father's estate. Both respondents filed answers and the case was referred to a master in chancery. The master's finding of fact and conclusions of law were adopted by the chancellor who, after argument and the sub-

mission of a brief by the petitioner, overruled all exceptions to the report and entered a decree in accordance with the master's recommendations. The petitioner appealed to the Supreme Court on the ground that freeholds were involved. The Supreme Court transferred the case to this court. Guttman v. Schiller, 23 Ill2d 323, 178 NE2d 387.

The father died in April 1930. The joint will was admitted to probate in Cook County and Morris was appointed administrator with the will annexed. Jay A. Schiller, who was nominated in the will as trustee, resigned. This case was then opened in the Circuit Court for the purpose of naming his successor. The court in October 1930 designated Joseph as successor trustee and retained jurisdiction of the cause for any other matters which might arise in the administration of the trust.

The sons are doctors of medicine and were practicing their profession at the time of their father's death. They had resided with their parents and continued to live with their mother after the father's death. Neither functioned rigidly as administrator or trustee. They treated all the property as if it were their mother's. They may have done this in an attempted compliance with the terms of the trust which gave her a life estate in all the property, or as dutiful sons trying to keep her free from financial harassment.

In 1931 the mother renounced the will and received her statutory portion of the estate. The final account filed in the Probate Court in 1931, showed distribution of the estate to the mother and to the two sons, one-third to each. The final account was approved by Joseph, Morris and the mother. In August 1932 the three also agreed in writing to a like division of the real estate. Despite this, and despite the fact that the Circuit Court had entered an order finding that the trust had not been accelerated by the renunciation

61

of the mother and that the trustee retained the powers given to him in the will, the two sons turned the entire estate over to their mother. All income from several pieces of property and all mortgage payments were given to her. When a sale was imminent quitclaim deeds would be signed and on occasion Joseph would petition the Circuit Court for authority to sell. During the mother's lifetime all the pieces were sold and as they were, the proceeds from the sales were also given to her. It is not clear from the record whether Joseph ever held any of the trust property as trustee; but, if he did, he never rendered an account as trustee to either his mother or brother for the property or funds held in trust or the profits, if any, realized from their use.

The mother died in 1953 in Arizona, where she had lived for many years. She and Barbara had long since been reconciled and in a will, executed a few months before her death, she named the daughter as her sole beneficiary. Most of her assets were left in a safety deposit vault in Arizona, which was in her name and Barbara's. There was serious doubt, under Arizona law, whether the sons would get anything and a will contest seemed inevitable.

Thereupon, in order to avoid a contest, Joseph and Morris, who were represented by the same Arizona attorney, and Barbara entered into a "full settlement and compromise of all their claims," which was filed in the Superior Court of Arizona in October 1953. In the signed stipulation they agreed that the mother's estate would be distributed one-third to each of them, that Barbara would retain certain savings bonds which were payable to her upon the death of her mother, and that certain silverware which had been in dispute belonged to Morris and was not an asset of the estate. In September 1955 an order was entered by the Arizona court approving the distribution of the estate in accordance with the terms of the stipulation.

During the pendency of the estate in Arizona an ancillary proceeding was opened in the Probate Court of Cook County. The ancillary administrator cited Joseph for having withdrawn funds from his mother's bank account. He defended on the ground that the funds were trust property. The Probate Court was therefore called upon to decide whether the funds belonged to the trust or the estate. It found that they belonged to the estate and Joseph was ordered to return them. Joseph filed a claim against the estate in the ancillary proceeding asserting that trust funds had been commingled with assets of the mother's estate and that Morris, as administrator of the estate of the father, had failed to turn over to him as trustee all of the proceeds of that estate but had transferred them to their mother. The claim was disallowed.

Again a settlement was reached. Two orders were entered by the Probate Court. The first, in April 1956, was approved in writing by the two brothers. A portion of this order is as follows:

> "That at no time were the terms of the trust, under the will of Bernhard [Bernard] Guttman ever carried out, nor was the trust ever acted upon. It is Therefore Ordered that no trust, under the will of Bernhard Guttman existed. . . ."

On June 5, 1956, the Probate Court entered the second order, also approved by Joseph and Morris, and by Joseph's attorney, which held that "all matters heretofore in dispute have been settled"; Joseph had not misappropriated funds or property belonging to his mother's estate; the money which he had been ordered to return was taken by him through mistake as to his legal rights; all demands and actions between the brothers were to be released; they were to cooperate in the sale of the mother's home in Arizona and the proceeds of that sale and of her estate in Cook County were to

63

be divided equally among the three heirs. The court also found that the funds of the mother had been so commingled that no trust funds could be traced and that her records did not reveal any clear intention to recognize any existing trust.

Notwithstanding the full accord reached in the Superior Court of Arizona in October 1953 and the complete settlement made in the Probate Court in June 1956, Joseph filed the present petition in January 1957. And, notwithstanding the pendency of this petition, he returned to the Probate Court in 1958 and moved to have the orders of 1956 set aside, contending that they were void because the Probate Court was without jurisdiction to enter them since they pertained to a trust. His motion was denied and he appealed to the Circuit Court. The Circuit Court found that the Probate Court did have jurisdiction. He appealed this finding to the Supreme Court and that appeal was also transferred to this court. The Appellate Court affirmed the Circuit Court. Guttman v. Estate of Guttman, 28 Ill App2d 85, 170 NE2d 40.

■■ In the present action the contention is again made that the 1956 orders of the Probate Court are void. It is but one of many contentions, going back as far as the renunciation of the will in 1931, which are raised in this appeal. It is sufficient to observe at this point that in 1956 the Probate Court was determining if the property left by the mother belonged to her estate or in the trust. Ill Rev Stats (1955), c 3, § 354. In stating that the funds of the mother had been so commingled that no trust funds could be traced and that her records did not show any intention to recognize a trust, the court was making findings of fact which supported its conclusion that the property belonged to her estate. The Probate Court did not interfere with the trust, did not interpret it, and did not attempt to exercise jurisdiction over it. In like fashion, the Arizona court was not administering the trust or ruling

upon it. The court had before it the estate of the mother, a resident of Arizona, and her will of May 1, 1953. It was dealing with a subject over which it had jurisdiction. As to the mother's 1931 renunciation of her joint will it must first be noted that no appeal was taken from this order; second, that it was not a void order and cannot be attacked collaterally even if it was erroneous, and third, that the 1931 final account in the father's estate was approved in writing by Joseph and he thereby concurred in the distribution to his mother. It also should be noted that in approving of the final account he stated that he did so in full settlement of his interest in the father's estate and in full settlement of any claims against Morris, the administrator.

■■ Before considering the numerous points argued in the petitioner's brief it must be determined whether, in view of his settlement agreements, he is barred from making any claim at all. He confronts his three signed agreements with contentions of fact and arguments of law. As to the facts, he testified that he signed under protest the agreement of August 1932 which divided the real estate of his father three ways; that he signed, in open court, the Arizona stipulation of October 1953 without realizing what it was; that the first two pages of this three-page document have since been altered, and that when he approved the Probate Court orders of 1956, orders which were prepared by his own attorney, he only knew and did what he was told. However, the master, who held more than 20 hearings and heard over 1100 pages of testimony and argument, found that he did not enter into the agreements blindly, or because of deception or overreaching. The master found that they were entered into voluntarily and for adequate consideration. The master's finding was not contrary to the manifest weight of the evidence. Disputed questions of fact resolved by a master and approved by a chancellor will not be set aside unless they are against the manifest

65

weight of the evidence. Anastaplo v. Radford, 14 Ill2d
526, 153 NE2d 37; Schmitt v. Heinz, 5 Ill2d 372, 125
NE2d 457; Amos v. Helwig, 19 Ill App2d 220, 153 NE2d
245.

■■■■■■ As to the law, the petitioner argues that his
settlements are meaningless because beneficiaries can-
not change the terms of a trust, and that by permitting
his sister to have part of his mother's estate he and his
brother were letting a nonbeneficiary share in the cor-
pus of the trust, contrary to the intention of his father,
the cocreator of the trust. This argument presumes
that the mother's estate consisted of trust property.
Many cases are cited in support of the proposition that
beneficiaries have no right to alter the terms of a trust.
It would be more accurate to say that the cases hold
that beneficiaries cannot modify or terminate a trust
except under certain conditions. If the conditions are
met the trust can be terminated. These conditions are:
the purpose of the trust must be substantially accom-
plished and all the interests created by it vested, there
can be no unascertainable contingent interests, there
can be no pending spendthrift provisions, the benefici-
aries must be in agreement, and none of them can be
under legal disability. In Anderson v. Williams, 262
Ill 308, 104 NE 659, the court said:

> "Where all the parties interested in the trust fund
> are sui juris they may consent to a termination
> of the trust and distribution of the fund, (2 Perry
> on Trusts, sec. 920) but this rule has never been
> applied where there are contingent interests in the
> trust which cannot be determined until the hap-
> pening of certain events or where the interests of
> minors are involved."

In Hubbard v. Buddemeier, 328 Ill 76, 159 NE 229, the
court described the applicable conditions:

> "Where the beneficiaries of a trust are all compe-
> tent to act and the trust is subject to no future

66

contingencies and the beneficiaries have an absolute right to the trust estate the trust may be terminated by a contract of all beneficiaries. Trusts cannot be terminated by agreement of the beneficiaries except in cases where the object of the trust has been practically accomplished and all the interests created by it have become vested."

These two cases were cited and the same principles were approved in Altemeier v. Harris, 403 Ill 345, 86 NE2d 229. In that case the trust had spendthrift provisions and provided for contingent beneficiaries. Certain income was given to the surviving wife and children for life but they received no interest in the corpus of the estate. After the death of the last survivor a limited income was provided to children for 21 years. It was uncertain to whom the corpus would be distributed until the time for distribution arrived. The court held that under these circumstances the beneficiaries could not modify and terminate the trust prior to its expiration. The court stated:

". . . where all of the persons are of age and sui juris and no principle of law is violated, the trust may generally be terminated if all of the cestuis que trustent consent."

But the court further stated:

". . . trusts cannot be terminated by agreement of the beneficiaries except in cases where the object of the trust has been practically accomplished and all the interests created by it have become vested."

And, the court said:

"Likewise, the rule is clear that a spendthrift trust may not be destroyed or terminated by the unanimous consent of the beneficiaries."

If the petitioner's presumption be taken as true that the mother's estate consisted of trust property, there

is no basis for his contention that he and Morris had no right to terminate the trust and give Barbara an equal share. The trust was to continue until the expiration of the lives of its creators. The trust terminated at the mother's death. The interests established by the trust became vested. All that remained to be done was distribution of the corpus to the two beneficiaries. The purpose of the trust was more than substantially accomplished. There were no contingent interests, there were no pending provisions for anyone's maintenance, education, medical care or other spendthrift limitations; the beneficiaries, two practicing physicians, were under no legal disability and they were in mutual agreement. At this point they were free to proceed as they wished. If they wanted to relinquish part of their shares or give them away they could do so. It was not necessary for them to wait until the trust estate was physically in their hands before they exercised their dominion over its disposition. The division with their sister neither violated the trust nor frustrated the directive of the settlors.

■ ■ If, on the other hand, the facts through the intervening years are viewed as extinguishing the trust because of intentional nonobservance (and this is what the master found and the chancellor held) the petitioner certainly was at liberty to make any settlement he cared to. The evidence supports the findings of the master that: the mother received all the personal property and all the real estate of the father through the voluntary action of the sons; none of the property left by the mother 23 years later was part of the father's estate or had been acquired through conversion of the assets of his estate; the evidence did not support Joseph's claim that Morris and Barbara had either taken or received part of those assets and that none of the father's estate had been misappropriated by Morris while he was the administrator.

■ In either event, if the trust existed at the time of the mother's death or if it did not, the 1953 Arizona stipulation and the 1956 Probate Court settlement constitute valid agreements and the petitioner, having entered into them of his own accord, is bound by them and is barred from asserting his present claim.

The judgment of the Circuit Court is affirmed.

Judgment affirmed.

SCHWARTZ and McCORMICK, JJ., concur.