St. Louis Union Trust Company, Executor of the Will
of William G. Hearne, Deceased, Plaintiff-Appellee,
v. James G. Hearne, Susan Hearne Wood, and Ed-
wardsville National Bank and Trust Company, as
Administrator with Will Annexed of the Estate of
Elizabeth Ellen Hearne and as Successor in Title to
the Trust Estate of the Residuary Trust Under the
Will of Frank P. Hearne, Defendants-Appellants.

Gen. No. 68–63.

Fifth District.

August 11, 1969.

Rehearing denied September 23, 1969.

Hoagland, Maucker, Bernard & Almeter, of Alton (Karl K. Hoagland, Jr., of counsel) and Dick H. Mudge, Jr., of Edwardsville, for appellants.

Schlafly, Godfrey & Fitzgerald, of Alton, for appellee.

EBERSPACHER, J.

This action was brought to construe the language which created the residuary trust under the Will of Frank P. Hearne, deceased. The action was brought by the St. Louis Union Trust Company as executor of the Will of William G. Hearne, deceased. William G. Hearne, deceased, was a son of the testator whose will created the trust. The parties defendant are James G. Hearne and Susan Hearne Wood, a son and daughter respectively of the testator, Frank P. Hearne, deceased, and Edwardsville National Bank and Trust Company, the administrator with the will annexed of the Estate of Elizabeth

Ellen Hearne and as Successor in Title of the Trust Estate of the Residuary Trust under the Will of Frank P. Hearne, deceased. The defendants prosecute this appeal from a decree entered in favor of the plaintiff, St. Louis Union Trust Company.

Frank P. Hearne died May 12, 1935. He left surviving his wife, Elizabeth Ellen Hearne and three children, William G. Hearne, James G. Hearne and Susan Hearne Wood. The will of Frank P. Hearne was admitted to probate on July 15, 1935. The portions applicable to this appeal provide as follows:

> "ITEM 4. All the rest, residue and remainder of my estate, real, personal or mixed, of whatsoever nature or wheresoever situate, which I may own or have the right to dispose of at the time of my decease, I give, devise, and bequeath to Mercantile-Commerce Bank & Trust Company and my beloved wife, Elizabeth Ellen Hearne, IN TRUST, NEVERTHELESS, to pay the net income of the trust fund in twelve (12) installments per annum to my said beloved wife, Elizabeth Ellen Hearne, so long as she shall live, with the right and privilege of giving Twenty-five Thousand ($25,000.00) Dollars of said trust fund to my said wife, Elizabeth Ellen Hearne at any time she may desire the same, in addition to the income from the trust funds as aforesaid." (Then follows three paragraphs devoted to the powers of the trustees which provide in substance that the trustees shall hold and manage the trust fund according to their sole judgment and discretion.)
>
> "At the death of my beloved wife, Elizabeth Ellen Hearne, this trust estate shall terminate and the principal of the trust then remaining shall be paid unto my children, William G. Hearne, James G. Hearne, and Susan Hearne Wood, share and share alike, or if they or either of them be deceased, then

414

share and share alike unto such child or children of such deceased child or children of mine, in the place and stead of such deceased child or children of mine; but in no event unto such surviving child or children of any deceased child of mine until such surviving child or children of such deceased child shall have reached the age of twenty-five (25) years." (Then follows a paragraph creating a trust for a child or children of a deceased child not having reached the age of 25 years.)

Mercantile-Commerce Bank and Trust Company declined to accept the trusteeship and the widow acted as sole trustee and managed the trust estate until her death on November 17, 1963. The will of Elizabeth Ellen Hearne was admitted to probate on December 13, 1963. In this will she had appointed her son, William G. Hearne, executor, but by reason of his death, the Edwardsville National Bank and Trust Company was appointed Administrator with Will Annexed of her estate and succeeded as trustee under the will of Frank P. Hearne.

As stated above, William G. Hearne predeceased his mother, having died on September 26, 1962. William was survived by his wife but left no children. His will was admitted to probate in the Probate Court of Madison County, Illinois, and the St. Louis Union Trust Company, the plaintiff herein, was appointed executor.

In the complaint filed by the plaintiff it is alleged that the administrator of the estate of Elizabeth Ellen Hearne and successor trustee proposes to make a distribution of all of the remaining assets of the Frank P. Hearne estate to the two surviving children, namely, James G. Hearne and Susan Hearne Wood. The complaint seeks a construction that the will create a vested remainder interest in the three children of the testator or in the

alternative that the will violated the rule against perpetuities.

The answer of the defendant, Edwardsville National Bank, admits that it intended to make a final distribution to the two named children and the answers of all three defendants seek a construction of the will which would sustain such a distribution.

After a full hearing on the matter the Court entered an order finding for the plaintiff. At the same time an extensive and scholarly written opinion was filed by the Court in support of its findings and order. A subsequent decree was entered pursuant to such order which found that the provision here at issue created a vested remainder in the children of the testator upon the condition that it could be divested if any of the children who predeceased the life tenant had surviving a child or children and as such was a vested remainder, subject to a condition subsequent. Accordingly, the Court held that since William G. Hearne did not have any surviving child the gift over in event of death of a remainderman failed and his interest became absolute and should go to his estate to be disposed of by his will. The Court further in its decree assessed a portion of the plaintiff's attorney fees against the defendants, James G. Hearne's and Susan Hearne Wood's share of the trust estate.

This appeal brought by all of the defendants seeks a determination of three issues: (1) whether the estate of William G. Hearne, deceased, had any interest in the Frank P. Hearne residuary trust in view of William G. Hearne's death prior to the death of the life tenant, Elizabeth Ellen Hearne; (2) whether the remainder interest violated the rule against perpetuities; (3) whether the assessment of attorney fees was error.

■ The cardinal rule of testamentary construction to which all other rules must yield is to ascertain the intention of the testator from the will itself and to effectuate this intention unless contrary to some established rule of law and public policy. Vollmer v. McGowan, 409 Ill

416

306, 311, 99 NE2d 337. The defendants urge that although the trial court acknowledged the prominence of such rule the court relied primarily upon the application of technical rules of construction rather than the actual meaning of the words employed in the entire will.

The defendants urge that the intention of the testator is clear and concise; that the will consistently expresses preference for the testator's wife and lineal descendants; that the will consistently expresses an intention of the testator to benefit his children who were alive at the death of his widow. The plaintiff, on the other hand, urges with equal force that the intention of the testator reflects that no one is to take the share of the deceased child unless the deceased child leaves a child who survives. The defendants in support of their contention direct our attention to Item 7 of the will.[1] The defendants urge that the phrase "wife and family" as used in the context of Item 7 must be interpreted to mean that the testator did not consider his own wife to be a part of his family and that accordingly it would be unreasonable to presume that the testator in the use and reference to his "wife and family" intended to include the wife of any of his children as "family." The plaintiff argues with equal persuasion that the testator expressed a normal desire to divide his estate equally among his three children and to provide for his grandchildren in the event of the death of their parent during the existence of the trust. To bolster their argument the plaintiff argues that the testator was well aware of the means by which he could have precluded the vesting as is indicated by

[1] "ITEM 7. This will has been carefully planned by me and it is my deliberate judgment that all of its provisions are wise and just and that the plan as a whole will prove beneficial and satisfactory to my wife and family. It is, therefore, my desire that my wife assent to this will and cooperate with this plan which I am confident will work to the advantage and welfare of herself and of the family as a whole."

417

the language he used in that part of Item 4 not heretofore quoted and Item 3 which refers to a separate trust.[2]

█ The only conclusion that can be reached is that the ambiguity of the language requires the application of rules of construction. Trabue v. Gillhan, 408 Ill 508, 97 NE2d 341; Storkan v. Ziska, 406 Ill 259, 94 NE2d 185.

█ There are certain general rules of construction which must be kept in mind in determining whether an interest is vested or contingent. First, the law favors vesting of estates at the earliest possible moment; second, where one of two constructions is possible, the construction that a devise is vested and not contingent will be adopted; and third, if a donor or testator clearly intends

[2] "ITEM 3. . . . No title in the trust estate hereby created or in the income accruing therefrom or in its accumulation shall vest in the beneficiary, and the beneficiary shall not have the right or power to transfer, assign, anticipate or encumber his interest in said estate or the income therefrom prior to the actual distribution thereof by said trustee to said beneficiary. . . .

"ITEM 4. . . . In the event a child or children of a deceased child or children of mine, not having reached the age of twenty-five (25) years, inherit under this will, except my grandchild, James Scott Biggs, such inheritance due him or her shall be held in trust for such child or children by his then remaining parent, if there be such, otherwise by the Mercantile-Commerce Bank & Trust Company of St. Louis, until such child or children attain the age of twenty-five (25) years, with no title in such trust estate or the income accruing therefrom, or its accumulation, vesting in such beneficiary; and the beneficiary shall not have the right or power to transfer, assign, anticipate or encumber his interest in said estate or the income therefrom prior to the actual distribution thereof by said trustee to said beneficiary, and neither the income nor principal shall be liable in any manner in the possession of the trustee for the debts, contracts, or engagements of the beneficiaries. The beneficiary shall not be permitted to appoint any agent or attorney-in-fact, except as may be specifically permitted by the trustee, to collect or receive such income or principal, if such agent or attorney-in-fact has directly or indirectly advanced any of such income or principal to such beneficiary. . . ."

418

to postpone vesting, that intention must be given effect. Peadro v. Peadro, 400 Ill 482, 81 NE2d 192; Baker v. Bates, 76 Ill App2d 30, 221 NE2d 302.

■ In determining whether the intention of the testator was to create a vested remainder or a contigent remainder our Supreme Court in Danz v. Danz, 373 Ill 482, 486, 26 NE2d 872 has said:

> "If the conditional element is incorporated into the description of, or into the gift to the remainderman then the remainder is contingent; if after words giving a vested interest a clause is added divesting it, the remainder is vested. A pertinent application of this rule would be in case of a devise to 'A' for life, remainder to his children, but if any child dies during the lifetime of 'A,' his share to go to those who survive, the share is vested subject to being divested by its death. But if the devise is to 'A' for life, remainder to such child of his children as survive him the remainder is contingent."

Also see Storkan v. Ziska, 406 Ill 259, 94 NE2d 185; Smith v. Shepard, 370 Ill 491, 19 NE2d 368; Fleshner v. Fleshner, 378 Ill 536, 539, 39 NE2d 9.

■ The main thing which distinguishes a vested from a contingent remainder is its present capacity to take effect in possession in a determinate person immediately upon the determination of the particular estate. In the one case there is a person in being ascertained and ready to take with a present right of future enjoyment, while in the other there is either no ascertained person in being ready to take immediately upon the determination of the particular estate or it is uncertain whether the event upon which the estate is to vest will ever happen. It is the uncertainty of the right to take property, and not the enjoyment of it, that distinguishes a contingent from a vested remainder. Riddle v. Killian, 366 Ill 294, 8 NE2d 629.

■ The words "after the death of my wife," of themselves do not postpone the vesting of the estate. Such words, unaccompanied by other controlling language, have been held to mean that the distribution or the enjoyment in possession of the property granted is to be postponed to let in the life estate, but the remainders created are vested, and that such words as "after the death of my wife" relate to the time of enjoyment and not to the time of vesting. Barker v. Walker, 403 Ill 230, 307, 85 NE 2d 748; Dustin v. Brown, 297 Ill 499, 130 NE 859; Whittaker v. Porter, 321 Ill 368, 151 NE 905; Fleshner v. Fleshner, 378 Ill 536, 39 NE2d 9.

■ Appellants have contended that since testator used the words "my wife and family" in Item 7 that he did not consider a spouse of his children as a part of the family. It is only natural that he should separate wife from family because he realized his wife could renounce her life estate and the other members of his family could not. This is evidenced by his expression of the desire "that my wife assent to this Will." Family may include relations by marriage. Marble v. Estate of Marble, 304 Ill 229, 236, 136 NE 589. The will did not say he wished only his descendants to ultimately benefit; and there is no evidence that he intended to discriminate between the spouses of his children who failed to outlive his wife and their mother, and those who did outlive his wife and their mother.

The contention that testator's children had only a contingent remainder unless they survived their mother, reads into the will words of survivorship which are not present. The fact that treating the gift to children as vested results in one-third going to an in-law instead of to surviving children does not justify reading words of survival into the will. Arguments similar to those presented here regarding family and a desire to keep the estate in hands of lineal defendants were rejected in Warner v. Warner, 237 F2d 561, 564, (App DC), the

420

Court relying in part on DeKorwin v. First Nat. Bank of Chicago, 179 F2d 347, (7th CCA, Ill).

Appellants also contend that there are no direct words of devise or gift to any of the beneficiaries of the residuary trust. There were direct words of devise and gift to the trustee and direct words that on the death of the widow the principal should be paid to the three children. Illinois cases have held that remainders similar to that of William G. Hearne's were vested even though there were no direct words of conveyance to the remainderman. See DeKorwin v. First Nat. Bank of Chicago, supra; Smith v. Shepard, 370 Ill 491, 493, 19 NE2d 368; People v. Allen, 313 Ill 156, 158, 144 NE 800; Warner v. Warner, supra.

Obviously the gift to the Hearne children was not a class gift, those who were to be paid the proceeds were not only individually named but their share was made certain by the words "share and share alike." See Strohm v. McMullen, 404 Ill 453, 89 NE2d 383; and Peadro v. Peadro, supra.

 The remainder limited to the three children was vested. However, the critical question as we see it, is the effect of the language of divestiture employed by the will. The conditions under which the interest of William G. Hearne would be divested are found in the phrase "or if they or either of them be deceased, then share and share alike unto such child or children of such deceased child or children of mine; . . . ." Under the present facts the gift over has failed since William G. Hearne did not leave a child or children. This being true, the divestiture is incomplete. The failure of the gift over rendered the conditional estate absolute, Burkholder v. Burkholder, 412 Ill 535, 107 NE2d 729; McGlothin v. McElvain, 407 Ill 142, 95 NE2d 68. It follows that William G. Hearne's remainder interest became a fee simple absolute and his interest went to his estate to be disposed of in accordance with his will.

Not only is this construction supported by Burkholder, supra, and McGlothin, supra, but is supported likewise by leading textbook authorities on future interests in Illinois. See Carey and Schuyler, Illinois Law of Future Interests, § 176 (1954 Cum PP, p 136) wherein McGlothin and Burkholder are discussed; and after quoting the language of the Burkholder will, points out that in that case one of the testator's children had predeceased the widow, leaving no child surviving him, and in the partition proceeding it was argued that the deceased child's share of the real estate did not pass as a part of his estate but passed as a part of the estate of the testator. The authors then say:

> "Apparently this contention was based in part on the notion that the event upon which the gift in remainder to the deceased son was to be divested had occurred, notwithstanding the fact that the property was to go over only if any child died 'leaving surviving' a child or children and the further fact that the son had not left a child surviving him. In other words, it must have been urged that the taking effect of the gift over was not a part of the divesting contingency. It should be noted that this was in no event a proper argument for the unambiguous language of the will was in itself not susceptible of the interpretation that divestiture could occur unless a remainderman died leaving children surviving."

We do not consider the language of Hearne's will susceptible of the interpretation that divestiture of one of his children could occur when such child died leaving no child or children. There is an absence here of any well-founded showing that Hearne intended to favor his children who had children over those who did not, nor is there such showing that the testator wished to favor his long-lived children over his shorter-lived ones. Furthermore, the drafter of his will knew how to prevent

vesting (See items 3, 4 and 7 of the Hearne will) if such had been the testator's intention.

The view that the remainder devised to William G. Hearne was a fee subject to a condition subsequent which could only be divested by his death leaving a child or children is not only supported by Burkholder, but is the majority view. See 28 Am Jur2d, Estates, § 296, wherein it is stated, "The greater number of decisions, however, proceed on the theory that divestment occurs only on death leaving issue, and that there is no divestment by death without issue." Such view is likewise supported by the American Law Institute Restatement of the Law of Property, Vol 111, Future Interests, § 254, p 1284:

> "A. Limitations which come within the rule stated in this Section are commonly of some one of three types. In the first of these types the gift over is to take effect if the taker dies survived by children (or issue) but no provision is found for the situation in which the taker dies unsurvived by children (or issue) (See Illustration 1). . . .
>
> "Illustrations:
> "1. A, owning Blackacre in fee simple absolute, effectively devises Blackacre 'to B for life, remainder to B's children, but if any child of B predeceased B, survived by children, then such persons shall take the parent's share'. B has children C and D.
> "I. C has children E and F. C's remainder is subject to defeasance by C failing to survive B if, but only if, E or F or other issue of C is alive at the time of C's death.
> "II. D dies without ever having had issue. B dies. The vested remainder originally created in D is not defeated by D's failure to survive B."

That the above rule is applicable here is apparent when we designate Frank P. Hearne, the testator as A, his widow Elizabeth as B, his daughter Mrs. Wood or son

423

James G. Hearne as C, and his deceased son William G. Hearne, as D.

By reaching the decision that we have, i. e., that the remainder interest was vested in William G. Hearne, we have necessarily foreclosured ourselves as to any question as to the Rule against perpetuities. McKibben v. Pioneer Trust & Savings Bank, 365 Ill 369, 6 NE2d 619; Griffin v. Griffin, 29 Ill2d 354, 194 NE2d 641.

The last issue presented by the defendants pertains to the attorney fees allowed by the court in favor of the plaintiff's attorneys. In the decree entered by the court attorney fees in a specific amount were allowed by the court. The order also provided that specific portion of the total amount, which was ⅓ of the total attorney fees allowed, would be paid by the Defendant Administrator from the James G. Hearne and Susan Hearne Wood shares of the trust estate of Frank P. Hearne, deceased, and the balance or remaining ⅔ from the William G. Hearne share of said trust estate. Only the ⅓ payable from the trust could be an issue in this appeal.

The gist of the defendants' argument is threefold:

(a) Attorney fees in will construction suits should not be taxed against the corpus of the estate where the will is not ambiguous and does not require construction; (b) Attorney fees in will construction suits should not be taxed against the corpus where the plaintiff is seeking personal gain only, to enforce an interest for his own personal account and not for the benefit of the estate; and (c) Attorney fees in will construction suits must be reasonable and equitable.

We shall deal with the defendants' arguments in the order in which they are presented above. As to the defendants' first argument that the will was clear and unambiguous and does not necessitate construction, we believe the language of the Court in Orme v. Northern

Trust Co., 25 Ill2d 151, 165, 183 NE2d 505, to be applicable:

> "In will construction cases the costs of litigation are borne by the estate on the theory that the testator expressed his intention so ambiguously as to necessitate construction of the instrument in order to resolve adverse claims to the property. (Dean v. Northern Trust Co., 266 Ill 205.) Legal fees are allowed to a party even though the construction adopted is adverse to his claim. (Ingraham v. Ingraham, 169 Ill 432, 471; Haight v. Royce, 274 Ill 162.) However such fees should not be authorized where such construction is unnecessary. . . . The criterion is whether an honest difference of opinion exists. In re Estate of Reeve, 393 Ill 272, 294; La Salle Nat. Bank v. MacDonald, 2 Ill2d 581, 589; Strickland v. Strickland, 271 Ill 614."

The present case certainly fits into the criterion as to whether an honest difference of opinion exists as is apparent from the litigation as of this date, and by the very fact that the defendant has prosecuted this appeal. Furthermore, by the admission of the successor trustee in its answer, some action was necessary to correct the construction it was using in its proposed distribution.

As to the defendants' second argument that attorney fees should not be taxed against the corpus where the plaintiff is seeking personal gain only, the defendants have cited as authority Waxenberg v. Brown, 299 Ill App 225, 20 NE2d 150. In that case the court found that the plaintiff had forfeited his interest in the testate property by contesting the will and that the plaintiff was seeking relief as an heir at law of the testator. The facts in the present case are the converse. The plaintiff here is seeking a will construction on behalf of the estate of William G. Hearne as a vested remainderman

of the trust created under the will of the testator. We also note that the construction which the plaintiff sought applied to the entire remainder of the trust. We might also note that in any will construction suit the plaintiff will always be seeking to enforce a personal interest in varying degrees.

As to the amount of the attorney fees which are objected to by the defendant, we will not disturb the opinion of the trial court which made specific findings as to the time and labor required, the novelty and difficulty of the questions involved, the skill requisite to conduct the cause and the benefits resulting from such services.

The decree of the Circuit Court of Madison County, Illinois, is accordingly, affirmed.

Judgment affirmed.

GOLDENHERSH and MORAN, JJ., concur.