ERVIN L. JURGENS, Trustee, Petitioner-Appellee, *v.* JOHN T. EADS *et al.*, Respondents.—(JOHN T. EADS *et al.*, Counterplaintiffs-Appellants, *v.* ERVIN L. JURGENS, Trustee, *et al.*, Counterdefendants-Appellees.)

Fourth District   No. 14855

Opinion filed December 19, 1978.

Nichols, Jones, McCown, Lincoln & Albin, of Tuscola, for appellants.

Harlan Heller, of Harlan Heller, Ltd., of Mattoon, and James McLaughlin, of McLaughlin & Florini, of Sullivan, for appellees.

Mr. JUSTICE MILLS delivered the opinion of the court:

We grapple here with contingent and vested remainders, executory interests and divestment.

In short—we affirm.

C. F. Eads died testate on February 25, 1950. By the terms of his will he gave his wife, Ella Eads, a life estate in his real estate and gave the remainder to his brother, John D. Eads, in trust. The terms directed the trustee to rent the real estate during the interim between the date of death of Ella Eads and the date of sale of the real estate which was to be by public auction within one year from the death of Ella Eads. After paying expenses, the proceeds were then to be distributed in equal one-sixth shares to nephews, John T. Eads and Clark J. Eads; sister, Viola Hines; brothers, Aaron W. Eads, James M. Eads, and John D. Eads. If a named beneficiary was dead "at the time for distribution," that person's share was to go to his heirs.

THE WILL

The pertinent wording of the testamentary trust read as follows:

"IN TRUST HOWEVER for the following named purposes, to wit:

(a)—To rent the same during the interim between the date the [sic] death of my said wife and the date of sale by him, collect the rent therefrom, pay the taxes and special assessments and necessary repairs during said period of time.

(b) Within one year after the death of my said wife, he, said John D. Eads, as trustee shall sell all of said real estate at public sale, on such terms as he may deem best for the interest of my estate, and from the proceeds of such sale, he shall pay first, the costs and expenses on making the sale and making the distribution as herein after directed. The balance remaining after payment of said costs and expenses, shall be by him distributed as follows:

1—To John T. Eads, only son of my said brother Samuel O. Eads, one sixth of said remainder. If my said nephew, John T. Eads, should be dead at the time for distribution, then and in such case said one sixth shall be distributed in equal parts to the heirs of his body, if any, and if none, then such one sixth shall be distributed among the persons and in the manner, stated in the succeeding paragraph of said will, (paragraph (2)) to wit:—Viola Hines, Aaron W. Eads, James M. Eads, John D. Eads, and my nephew, Clark J. Eads.

2—He shall pay to my sister Viola Hines, my brothers, Aaron W. Eads, James M. Eads, and John D. Eads and to my nephew Clark J. Eads, an equal one sixth of said proceeds. Provided, that if either of them shall be dead at the time for distribution and shall have heirs of her or his body then living, such share of such deceased brother, sister or nephew, shall be paid in equal parts to the heirs of the body of such deceased; other wise, in the event of the death of either of said sister, brother or nephew, without leaving heirs of her or his body surviving the share or shares of such deceased shall be distributed among the then surviving sister, brother or nephew, and the heirs of the body of such of said person as may then be dead."

## THE HEIRS

The trustee, John D. Eads, died on January 26, 1958, and Ervin L. Jurgens was appointed successor-trustee by the circuit court. The life tenant, Ella Eads, died testate on April 6, 1977, and all the named beneficiaries predeceased her except Clark J. Eads. John T. Eads died leaving as heirs his children: John T. Eads, Elizabeth Eads Thomas, and James C. Eads. Viola Hines died leaving three children: Walter Hines, who died with three children surviving him, Walter E. Hines III, Leonard H. Hines, Linda Hines Warren; Leonard E. Hines; Frank Hines, who died having had one child, Betty Weissinger. Aaron W. Eads died leaving three children: James F. Eads, Sarah Hickman, and Marjorie Williams. James M. Eads died never having had a child. John D. Eads' only child predeceased him. These 12 "beneficiaries" are of lawful age and under no legal disability.

## THE PLEADINGS

On May 12, 1977, the trustee filed a petition to sell the real estate at public sale, but on July 20, 1977, certain of the respondents and the counterplaintiffs who are the 12 "beneficiaries" filed an answer and a counterclaim requesting termination of the trust and distribution to them of the trust corpus in kind. The trustee filed an answer to the counterclaim on September 6, 1977.

After a hearing was held on the petition, the court allowed the trustee's petition to sell the real estate and denied the counterclaim on October 18, 1977. The respondents and counterplaintiffs then filed a post-trial motion on November 15, 1977, asking the court to vacate its decree authorizing the sale of the real estate (or in the alternative grant a new trial), claiming among other things that the trustee failed to deny the affirmative allegations contained in respondents' and counterplaintiffs' answer. On December 23, 1977, the trustee filed a reply to respondents' and counterplaintiffs' July 20, 1977, answer.

The trustee filed a motion on January 3, 1978, to vacate the October 18, 1977, decree and add as new party respondents the issue and unborn children of the counterplaintiffs. The respondents and counterplaintiffs moved to strike and dismiss the motion because it was filed more than 30 days after the court's judgment. The court below overruled the respondents' and counterplaintiffs' objection to the late filing of the reply to their answer and denied their motion to vacate the decree authorizing the sale or in the alternative a new trial. On February 24, 1978, respondents and counterplaintiffs filed a notice of appeal from the October 18, 1977, decree.

Subsequently, on March 7, 1978, the trial court allowed the respondents' motion to vacate the court's decree, allowed the

respondents' motion for a new trial, allowed the petitioner's motion to vacate the decree, and allowed the petitioner's motion to add new parties as respondents. Respondents' and counterplaintiffs' appeal was dismissed by this court on April 5, 1978, but was reinstated on April 20, 1978.

## APPEALABILITY

■■ ■ The initial question which must be resolved is whether the respondents and counterplaintiffs filed a timely notice of appeal from a final and appealable order. A party has 30 days after the entry of a judgment (or within a court-allowed time extension) to file a motion for rehearing, retrial, modification, vacation, or other relief. (Ill. Rev. Stat. 1975, ch. 110, par. 68.3.) Except for a section 72 petition, the court is without authority to allow a motion filed later than 30 days from the final judgment. (*Pape v. Department of Revenue* (1968), 40 Ill. 2d 442, 240 N.E.2d 621.) Nor does the court have authority to allow a party to file a late motion which is supplementary to his adversary's timely motion. (*Stotlar v. Stotlar* (1977), 50 Ill. App. 3d 790, 365 N.E.2d 1097.) However, if a party does file a motion within 30 days, the trial court retains jurisdiction to alter its order. *City of DeKalb v. Anderson* (1974), 22 Ill. App. 3d 40, 316 N.E.2d 653.

■■ In *City of DeKalb,* both parties filed timely post-trial motions and the appeal was taken before both motions had been ruled upon by the court. The appeal was ruled premature since the trial court still had jurisdiction. In the present case, only the respondents and counterplaintiffs filed a timely post-trial motion and that motion was considered by the court on January 27, 1978. The court was without authority to consider petitioner's motion of January 13, 1978, filed 87 days after the October 18, 1977, order. Therefore, the court's denial of respondents' and counterplaintiffs' post-trial motion on January 27, 1978, was a final and appealable order as the trial court no longer had jurisdiction of the case.

## CONTINGENT OR VESTED REMAINDER?

Next it must be determined whether all the interests created by the trust are vested so that the beneficiaries can terminate the trust. The 12 "beneficiaries" of the trust have entered into a written agreement requesting the termination of the trust and distribution to them of the trust corpus in kind. The court, in *Guttman v. Schiller* (1963), 39 Ill. App. 2d 58, 187 N.E.2d 315, set forth the following conditions for termination of a trust by the beneficiaries:

> "These conditions are: the purpose of the trust must be substantially accomplished and all the interests created by it vested, there can be no unascertainable contingent interests, there can be no pending spendthrift provisions, the beneficiaries must be

in agreement, and none of them can be under legal disability." (39 Ill. App. 2d 58, 66, 187 N.E.2d 315, 319.)

The cases are in agreement that a trust cannot be terminated unless all the interests created by it are vested. *Mohler v. Wesner* (1943), 382 Ill. 225, 47 N.E.2d 64; *Fenske v. Equitable Life Assurance Society* (1950), 340 Ill. App. 58, 91 N.E.2d 465.

■■ A *contingent* remainder is either to a person not yet ascertained or not in being or depends upon an event which may never happen, while a *vested* remainder is to one ready to come into possession upon the termination of the prior estate. The distinction between vested and contingent is not the uncertainty whether the vested remainderman will live to enjoy his interests, but whether he will ever have a right to enjoyment. Thus, a gift is vested even if the right of enjoyment is deferred and neither a prior estate for life nor a condition subsequent will make it contingent. *People v. Allen* (1924), 313 Ill. 156, 144 N.E. 800; *Calvert v. Calvert* (1921), 297 Ill. 22, 130 N.E. 347; *Carter v. Carter* (1908), 234 Ill. 507, 85 N.E. 292; *St. Louis Union Trust Co. v. Hearne* (1969), 111 Ill. App. 2d 411, 250 N.E.2d 674.

■■ Applying this reasoning to the present case, Ella Eads had a life estate and John T. Eads, Viola Hines, Aaron W. Eads, James M. Eads, John D. Eads, and Clark J. Eads, all had *vested* remainders since upon Ella Eads' death they had the right to enjoy the proceeds of the real estate. However, if they died before the time for distribution, then their interests were to go to the heirs of their bodies then living. Therefore, their vested remainders were subject to divestment. The heirs of the body of these named beneficiaries had executory interests since they served to divest the vested remainders of their interests. Executory interests do not vest until they become possessory. *Fitzgerald v. Daly* (1918), 284 Ill. 42, 119 N.E. 911.

When John T. Eads, Viola Hines, Aaron W. Eads, James M. Eads, and John D. Eads died before the life tenant, their vested interests were divested by the heirs of their bodies. The interests of John T. Eads, Elizabeth Eads Thomas, James C. Eads, Walter E. Hines III, Leonard H. Hines, Linda Hines Warren, Leonard E. Hines, Betty Weissinger, James F. Eads, Sarah Hickman, and Marjorie Williams then became vested, but they, too, were subject to divestment if they died before the time for distribution. Thus, their heirs had executory interests. Since not all the interests created by the will were vested, the trust could not be terminated.

Respondents and counterplaintiffs claim that their interests were indefeasibly vested because the language "should be dead at the time for distribution" is referring to the death of the life tenant when the gift became payable. They assert the will indicates that the death of the life tenant, the sale of the property, and the distribution of the proceeds were

to be treated as a single event. In *Wiener v. Severson* (1957), 11 Ill. 2d 347, 143 N.E.2d 225, the testator wrote that:

> " 'This trust shall be immediately terminated and the trust estate herein shall be distributed in cash or kind upon the death of the survivor of Anna Severson and Norman Severson,* * *.
>
>      * * *
>
> In the event that either my son Edgar Severson or my daughter Emma S. Viener, shall die before the termination of this trust and before the distribution thereof, leaving him or her surviving no issue, then the share of such deceased person shall be paid to the survivor of the said Edgar Severson and Emma S. Viener.' " (11 Ill. 2d 347, 348-49, 143 N.E.2d 225, 226.)

In construing this provision, the Illinois Supreme Court held that:

> "The provision requiring termination and distribution 'upon' the death of the surviving life beneficiary does not indicate the testator thought of the interval between death and distribution, or intended to provide for events which might occur therein. On the contrary, the natural inference from his language is that he contemplated as a single event the death of the surviving life beneficiary, the termination of the trust, and the distribution of the trust estate; assumed that the persons living at the death of the life beneficiary and those who were to receive the estate would be the same; and intended their interests to become absolute at the time of such death." 11 Ill. 2d 347, 352, 143 N.E.2d 225, 228.

However, the language in the present will clearly indicates the death of the life tenant and the distribution of the proceeds were not contemplated to be simultaneous events. Within one year after the death of Ella Eads the trustee was instructed to sell the real estate and distribute the proceeds, but during the interim between the death and the sale he was to *rent* the property.

The case of *Klocksieben v. Orris* (1942), 317 Ill. App. 115, 45 N.E.2d 504, is quite similar in that the trustee was instructed to sell the property within four years of the life tenant's death. The court held that the remainderman had to survive until the time for distribution in order to take under the will.

## CONCLUSION

Thus, although respondents and counterplaintiffs in the case before us had vested interests in the real estate, those interests would be divested by their death prior to the time for distribution which is established by the testamentary trust as occurring after the sale of the real estate and payment of costs and expenses. Since all the interests created by the Eads

will are not vested, *i.e.*, the executory interests in the heirs of the 12 "beneficiaries," the trust cannot be terminated.

Affirmed.

REARDON, P. J., concurs.

Mr. JUSTICE TRAPP, dissenting:

It is difficult to perceive that we achieve a rational purpose in holding that the several respondents are barred from electing to receive their interests in a manner other than that preferred by a trustee.

The principal opinion leaves unresolved and undefined the question of the "time for distribution." It may be the date of sale, a trustee's report of sale, a petition for distribution, or the writing of the checks by the trustee, or the cashing of his check by an individual distributee. The possibility of divestiture must be determined at some point in time but that point remains undetermined.

It is unnecessary to agree with respondents that the death of the life tenant was the point at which possible further divestiture was barred. Here, the trustee had administered the trust estate for the authorized period of one year. He had petitioned the court to direct the sale of the real estate and in such petition computed and stated the interests of the respondents, and had prayed that the court determine the interests of the parties and direct the "distribution of the proceeds of sale accordingly." Immediately, the respondents, whose respective interests were so stated, filed pleading setting up their agreement and election to take the trust estate in kind.

The principal opinion finds no reason to prevent the termination of the trust by reason of the conditions stated in *Guttman v. Schiller* (1963), 39 Ill. App. 2d 58, 187 N.E.2d 315, other than the asserted possibility of divestiture prior to the time of distribution.

The decree of the trial court finds that the allegations of the petition to sell real estate filed by the trustee are true. This presumably is a finding that the allegations of the petition which set forth the interests of the several respondents are true and correct. Such findings rationally would support a decree for distribution in kind forthwith.

Language from the opinion in *Klocksieben v. Orris* (1942), 317 Ill. App. 115, 45 N.E.2d 504, is cited. That will provided for a trustee's sale within four years after the death of the life tenant mother. The apparent purpose was to seek and procure an advantageous sale. Testator's daughter died about 14 months after the death of the life tenant mother. The executor of the deceased daughter argued that as against the

deceased daughter's children, the interest should be a part of the daughter's estate. The facts here are so different that any stated concept of the "time for distribution" is hardly persuasive by comparison.

In *Wiener v. Severson* (1957), 11 Ill. 2d 347, 143, N.E.2d 225, the testator created a trust to be "immediately terminated" on the death of the survivor of two life tenants and named two children to take at such time. The will provided that if either of the latter should die "before the termination of this trust and before the distribution thereof," the survivor should take. A beneficiary survived the life tenants but died before the actual distribution. The surviving beneficiary claimed the entire estate because the deceased beneficiary did not survive "actual distribution." In affirming the decree giving a one-half interest to the estate of the deceased beneficiary, the court stated:

> "Under the construction urged by appellant the time at which important rights are determined would depend upon the delay or diligence with which distribution might be made. Since the date of actual payment would be uncertain, and to some extent within the control of interested parties, an intention to make the children's interests dependent upon survival thereof is unlikely, and should not be inferred in the absence of clear and explicit provisions to that effect. (See 96 C.J.S. 116, Wills, sec. 727, and cases therein cited construing provisions for a gift over on death before payment or distribution as referring to the time the share is payable, rather than the time of actual payment.) * * * Actual receipt may be delayed by so many different causes that courts are unwilling to impute to the testator an intention to make such an event determine the time at which an interest may be divested." 11 Ill. 2d 347, 352-53, 143 N.E.2d 225, 228.

The *Severson* opinion quoted language from *Costello v. Warnisher* (1955), 4 Ill. App. 2d 571, 581, 124 N.E.2d 542, 546:

> "The intervals between request and sale, sale and distribution, and then payment were used rather with a contemplation that these events were concurrent."

So here the intervals between the petition to sell and the sale and distribution of proceeds should be treated as simultaneous or concurrent within the context of the will.

The facts in this case present no overriding reason for delaying the distribution beyond the filing of the petition for sale and the filing of the election for distribution in kind by respondents. I would reverse and remand the case.